COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-408-CV

 

 

IN THE INTEREST OF M.C.                                                                    

AND
D.K., CHILDREN

                                                                                                        

 

                                              ------------

 

           FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction

Appellant Gaylene C. appeals
the termination of her parental rights to her children, M.C. and D.K.  Appellant Kent M. appeals the termination of
his parental rights to his daughter, M.C. 
Both Gaylene and Kent challenge the sufficiency of the evidence to
support the trial court=s family
code section 161.001(1) and 161.001(2) findings in the termination order.  We will affirm.








II.  Factual and Procedural Background

Gaylene is the mother of
five-year-old M.C., three-year-old D.K., and three older children.  Gaylene left M.C. and D.K. with their
grandmother at some point.  The
grandmother moved to California a few months later and left the children with
Janelle S., the children=s aunt.  Janelle had previously been awarded permanent
managing conservatorship of Gaylene=s three older children. 

On July 10, 2006, Janelle
requested that CPS take custody of M.C. and D.K. because she was no longer able
or willing to care for them.  CPS
investigator Cathy Lee did not locate Gaylene until sometime around August 10,
2006.  Gaylene initially told Lee that
she did not know where M.C. and D.K. were, but she later said that she knew
they were with her sister.  CPS removed
the children from Janelle=s care on
August 21, 2006.








Lee had concerns about
illegal drug use by Gaylene.  When Lee
located Gaylene on August 10, 2006, Gaylene said that she had used crack
cocaine the previous day.  Gaylene took a
drug test at the request of Appellee Texas Department of Family and Protective
Services (ATDFPS@) on or about May 21, 2007, and admitted to TDFPS that she had used
cocaine.  At trial, Gaylene agreed that
although she testified at a previous hearing that she had not used drugs for
three months, she took a drug test and was Anowhere near clean.@  Gaylene testified that she
never used drugs Aaround [her]
kids or in front of [her] kids,@ but that she Amight have@ been under the influence of illegal drugs while she kept her
children.  When asked when she last used
drugs, Gaylene answered, AIt=s been a month for sure.@  Gaylene did not complete
before trial the service plan that TDFPS prepared for her.

Kent is the alleged
biological father of M.C.  He was
incarcerated when Janelle called CPS in July 2006.  CPS did not consider placing the children
with Kent after the children=s removal because he had just been released from jail and was waiting
to return, possibly for a parole violation.

According to Kent, Gaylene does
not do drugs around her children, but Ashe probably has a drug problem@ and she Aneeds help
for drugs.@  Kent used illegal drugs in the past, but he
testified that he had not used any since his release from jail.  He lived with Gaylene before his
incarceration, and he intends to live with her in the future.  Kent has multiple convictions for delivery of
a controlled substance, one conviction for possession of a controlled substance
(for which he is currently on parole), and a misdemeanor conviction for
unlawfully carrying a weapon.  The
controlled substance involved in these convictions was cocaine.  Kent did not complete before trial the
service plan that TDFPS prepared for him.








The trial court granted TDFPS=s petition to terminate the parental rights of Gaylene and Kent.  The termination order reflects that the trial
court found by clear and convincing evidence that Gaylene knowingly placed or
knowingly allowed M.C. and D.K. to remain in conditions or surroundings which
endangered their physical or emotional well-being; engaged in conduct or
knowingly placed M.C. and D.K. with persons who engaged in conduct which
endangered their physical or emotional well-being; and constructively abandoned
M.C. and D.K.  See Tex. Fam. Code Ann. ' 161.001(1)(D), (E), & (N) (Vernon Supp. 2007).  The trial court found that Kent knowingly
placed or knowingly allowed M.C. to remain in conditions or surroundings which
endangered her physical or emotional well-being; engaged in conduct or
knowingly placed M.C. with persons who engaged in conduct which endangered her
physical or emotional well-being; and constructively abandoned M.C.  See id. 
The trial court further found that termination of Gaylene=s and Kent=s parental
rights was in M.C.=s and D.K.=s best interest.[2]

III.  Evidentiary Sufficiency








Both Gaylene and Kent argue
that the evidence is legally and factually insufficient to support the trial
court=s family code section 161.001(1) findings, and Kent challenges the
legal and factual sufficiency of the evidence supporting the trial court=s best interest finding as to M.C.; Gaylene challenges only the
factual sufficiency of the trial court=s best interest finding.[3]

A.     Standards of Review








A parent=s rights to Athe
companionship, care, custody, and management@ of his or her children are constitutional interests Afar more precious than any property right.@  Santosky v. Kramer, 455
U.S. 745, 758B59, 102 S.
Ct. 1388, 1397 (1982); In re M.S., 115 S.W.3d 534, 547 (Tex. 2003).  AWhile parental rights are of constitutional magnitude, they are not
absolute.  Just as it is imperative for
courts to recognize the constitutional underpinnings of the parent-child relationship,
it is also essential that emotional and physical interests of the child not be
sacrificed merely to preserve that right.@  In re C.H., 89 S.W.3d
17, 26 (Tex. 2002).  In a termination
case, the State seeks not just to limit parental rights but to end them
permanentlyCto divest
the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child=s right to inherit.  TEX. FAM. CODE ANN. ' 161.206(b); Holick v. Smith, 685 S.W.2d 18, 20 (Tex.
1985).  We strictly scrutinize
termination proceedings and strictly construe involuntary termination statutes
in favor of the parent.  Holick,
685 S.W.2d at 20B21; In re
E.M.N., 221 S.W.3d 815, 820 (Tex. App.CFort Worth 2007, no pet.).

In proceedings to terminate
the parent‑child relationship brought under section 161.001 of the family
code, the petitioner must establish one ground listed under subdivision (1) of
the statute and must also prove that termination is in the best interest of the
child.  TEX. FAM. CODE ANN. ' 161.001; In
re J.L., 163 S.W.3d 79, 84 (Tex. 2005). 
Both elements must be established; termination may not be based solely
on the best interest of the child as determined by the trier of fact.  Tex. Dep=t of Human Servs. v. Boyd, 727 S.W.2d
531, 533 (Tex. 1987).








Termination of parental
rights is a drastic remedy and is of such weight and gravity that due process
requires the petitioner to justify termination by clear and convincing
evidence.  TEX. FAM. CODE ANN. '' 161.001, 161.206(a); In re J.F.C., 96 S.W.3d 256, 263 (Tex.
2002).  This intermediate standard falls
between the preponderance standard of ordinary civil proceedings and the
reasonable doubt standard of criminal proceedings.  In re G.M., 596 S.W.2d 846, 847 (Tex.
1980); In re C.S., 208 S.W.3d 77, 83 (Tex. App.CFort Worth 2006, pet. denied). 
It is defined as the Ameasure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.@  Tex.
Fam. Code Ann. ' 101.007.

In reviewing the evidence for
legal sufficiency in parental termination cases, we must determine whether the
evidence is such that a fact-finder could reasonably form a firm belief or
conviction that the grounds for termination were proven.  In re J.P.B., 180 S.W.3d 570, 573
(Tex. 2005).  We must review all the
evidence in the light most favorable to the finding and judgment.  Id. 
This means that we must assume that the fact-finder resolved any
disputed facts in favor of its finding if a reasonable fact-finder could have
done so.  Id.  We must also disregard all evidence that a
reasonable fact-finder could have disbelieved. 
Id.  We must consider,
however, undisputed evidence even if it is contrary to the finding.  Id. 
That is, we must consider evidence favorable to termination if a
reasonable fact-finder could, and disregard contrary evidence unless a
reasonable fact-finder could not.  Id.

We must therefore consider
all of the evidence, not just that which favors the verdict.  Id.  But we cannot weigh witness credibility issues
that depend on the appearance and demeanor of the witnesses, for that is the
fact-finder=s
province.  Id. at 573, 574.  And even when credibility issues appear in
the appellate record, we must defer to the fact-finder=s determinations as long as they are not unreasonable.  Id. at 573.








In reviewing the evidence for
factual sufficiency, we must give due deference to the fact-finder=s findings and not supplant the verdict with our own.  In re H.R.M., 209 S.W.3d 105, 108
(Tex. 2006).  We must determine whether,
on the entire record, a fact-finder could reasonably form a firm conviction or
belief that the parent violated the relevant section 161.001(1) finding and
that the termination of the parent=s parental rights would be in the best interest of the child.  C.H., 89 S.W.3d at 28.  If, in light of the entire record, the
disputed evidence that a reasonable fact-finder could not have credited in
favor of the finding is so significant that a fact-finder could not reasonably
have formed a firm belief or conviction in the truth of its finding, then the
evidence is factually insufficient.  H.R.M.,
209 S.W.3d at 108.

B.     Sufficient EvidenceCSection 161.001(1)(D) and (E) Findings








The trial court may order termination of the parent-child
relationship if it finds by clear and convincing evidence that the parent has
knowingly placed or knowingly allowed the child to remain in conditions or
surroundings which endanger the physical or emotional well-being of the
child.  Tex.
Fam. Code Ann. ' 161.001(1)(D).  Endangerment is defined as exposing to loss
or injury, to jeopardize.  In re
J.T.G., 121 S.W.3d 117, 125 (Tex. App.CFort Worth 2003,
no pet.).  Under subsection (D), it is
necessary to examine evidence related to the environment of the child to
determine if the environment was the source of endangerment to the child=s physical or
emotional well-being.  In re D.T.,
34 S.W.3d 625, 632 (Tex. App.CFort Worth 2000,
pet. denied).  To support a finding of
endangerment, the parent=s conduct does not necessarily have to be
directed at the child, and the child is not required to suffer injury.  Boyd, 727 S.W.2d at 533.

The trial court may order termination of the parent-child
relationship if it finds by clear and convincing evidence that the parent has
engaged in conduct or knowingly placed the child with persons who engaged in
conduct that endangers the physical or emotional well-being of the child.  Tex.
Fam. Code Ann. ' 161.001(1)(E).  Under subsection (E), the relevant inquiry is
whether evidence exists that the endangerment of the child=s physical or
emotional well-being was the direct result of the parent=s conduct,
including acts, omissions, and failures to act. 
J.T.G., 121 S.W.3d at 125. 
Termination under subsection (E) must be based on more than a single act
or omission; a voluntary, deliberate, and conscious course of conduct by the
parent is required.  Id.; D.T.,
34 S.W.3d at 634.  








The specific danger to the
child=s well-being may be inferred from parental misconduct alone, including
conduct that subjects the child to a life of uncertainty and instability.  Boyd, 727 S.W.2d at 533.  A parent=s decision to engage in illegal drug use during the pendency of a
termination suit, when the parent is at risk of losing a child, supports a
finding that the parent engaged in conduct that endangered the child=s physical or emotional well-being. 
In re J.A., No. 02-05-00454-CV, 2006 WL 3114434, at *5 (Tex. App.CFort Worth Nov. 2, 2006, no pet.) (mem. op.).  Conduct that subjects a child to a life of
uncertainty and instability also endangers the child=s physical and emotional well-being. 
See In re S.D., 980 S.W.2d 758, 763 (Tex. App.CSan Antonio 1998, pet denied).








Because the evidence
pertaining to subsections 161.001(1)(D) and (E) is interrelated, we conduct a
consolidated review.  In re T.N.S., 230 S.W.3d 434,
439 (Tex. App.CSan Antonio 2007, no pet.); J.T.G.,
121 S.W.3d at 126.  The evidence
demonstrates that Gaylene has engaged in a deliberate, continuing course of
illegal drug use, that Gaylene has a drug problem, and that Gaylene=s and Kent=s acts and
omissions have subjected M.C. and D.K. to a life of
uncertainty and instability.  Gaylene
admitted to using illegal drugsCcrack cocaineCon three specific,
different occasions: on or about August 9, 2006, the day before CPS removed
M.C. and D.K. from Janelle=s possession; at
some point near the final hearing before trial; and at least a month before the
final trial, which was in November 2007.[4]  Her use of
illegal drugs has not been limited to these three instances.  According to Gaylene, Athere is a lot of things that I do that I don=t do when I have my [children].@  Although Gaylene testified that she
never used drugs in front of M.C. and D.K., she tacitly acknowledged using
illegal drugs while caring for them when she explained that she Amight have@ been under
the influence of illegal drugs at some point when she had them.  Gaylene left M.C. and D.K. with her mother,
who left the children with Janelle, who was unable to continue caring for them
and called CPS.  Gaylene enrolled in an
outpatient drug rehabilitation program as part of her court-ordered services
but stopped attending after a few weeks.

Kent knows that Gaylene uses
illegal drugs.  He testified, however,
that she does not do drugs in front of her children and, furthermore, that she Aprobably has a drug problem@ when she Aleave[s]@ her children with her mother, which seems to have occurred on more
than one occasion.  Kent lived with Gaylene
before his incarceration, he allowed M.C. to remain in Gaylene=s care despite his
knowledge of her continued, illegal drug use, and he intends to live with
Gaylene in the future.  Kent was incarcerated when Janelle made her CPS report in July 2006, and at the time of
trial, he was on parole for his possession of a controlled substance
conviction.








Viewing the evidence in the light most favorable to the
finding and judgment, we hold that a fact-finder
could reasonably form a firm belief or conviction that Gaylene=s and Kent=s acts, omissions,
or failures to act endangered M.C.=s and D.K.=s physical or
emotional well-being.  See J.P.B., 180 S.W.3d at 573.  Moreover, on the
entire record, a fact-finder could reasonably form a firm conviction or belief
that Gaylene and Kent=s acts or
omissions violated by clear and convincing evidence the trial court=s section 161.001(1)(D) or (E) findings; the disputed evidence that
the trial court could not have credited in favor of its section 161.001(1)(D)
or (E) findingsCconsisting
primarily of Gaylene=s and Kent=s testimony that they completed parts of the service plan and that
Gaylene does not do illegal drugs in the presence of M.C. and D.K.Cis not so significant that the trial court could not reasonably have
formed a firm belief or conviction in the truth of its findings.  See H.R.M., 209 S.W.3d at 108; C.H.,
89 S.W.3d at 28.  The evidence is
thus legally and factually sufficient to support the trial court=s family code
section 161.001(1)(D) or (E) findings.  Because we have held that the evidence is legally and factually
sufficient to support the trial court=s section 161.001(1)(D) or (E) findings, we need not determine whether
the evidence is sufficient to support the trial court=s section 161.001(1)(N) finding. 
See J.L., 163 S.W.3d at 84 (stating that Petitioner must
establish only one ground listed under subsection 161.001(1)).  We overrule Gaylene=s first issue and
Kent=s first issue.








C.      Sufficient EvidenceCBest Interest
Finding

Prompt and permanent
placement of the child in a safe environment is presumed to be in the child=s best interest.  Tex. Fam. Code Ann. ' 263.307(a).  There is also a
strong presumption that keeping a child with a parent is in the child=s best interest.  In re R.R.,
209 S.W.3d 112, 116 (Tex. 2006). 
Nonexclusive factors that the trier of fact in a termination case may
use in determining the best interest of the child include:

(1)    the desires of the child;

 

(2)    the emotional and physical needs of the child now and in the
future;

 

(3)    the emotional and physical danger to the child now and in the
future;

 

(4)    the parental abilities of the individuals seeking custody; 

 

(5)    the programs available to assist these individuals to promote the
best interest of the child;

 

(6)    the plans for the child by these individuals or by the agency
seeking custody;

 

(7)    the stability of the home or proposed placement;

 

(8)    the acts or omissions of the parent which may indicate that the
existing parent‑child relationship is not a proper one; and

 

(9)    any excuse for the acts or
omissions of the parent.








Holley v. Adams, 544 S.W.2d 367, 371B72 (Tex. 1976).  These factors
are not exhaustive; some listed factors may be inapplicable to some cases;
other factors not on the list may also be considered when appropriate.  C.H., 89 S.W.3d at 27.  Furthermore, undisputed evidence of just one
factor may be sufficient in a particular case to support a finding that
termination is in the best interest of the child.  Id. 
On the other hand, the presence of scant evidence relevant to each
factor will not support such a finding.  Id.

Here, CPS caseworker Scott
Flanigan testified that M.C. and D.K. were together in a Avery good@ foster home
and that termination of Gaylene=s and Kent=s parental
rights was in the children=s best interest.  Considering
the evidence that Gaylene uses illegal drugs, that she used illegal drugs while
caring for M.C. and D.K., that she has not resolved her drug problem since CPS
removed M.C. and D.K., that she leaves the children with her mother or some
other person to care for them when she uses illegal drugs, and that she failed
to complete her service plan and demonstrate an ability to provide a stable
home for the children, factors including the emotional or physical danger to
the children, the emotional and physical needs of the children, and Gaylene=s acts or omissions as a parent support the trial court=s finding that
termination of Gaylene=s parental rights to M.C. and D.K. is in
their best interest.








As for Kent, Flanigan testified that he had concerns about
returning M.C. to Kent because Kent does not have his own place of residence,
he did not complete his service plan, and he will be on parole for another
year.  Kent testified that he intended to
live with Gaylene in the future, which raises the possibility that the children
would be passed off again to Gaylene=s mother or some
other individual due to Gaylene=s continued drug
use.  Kent also lived with Gaylene before
his incarceration, yet he allowed M.C. to remain in Gaylene=s care knowing
that she used illegal drugs.  He also has
multiple convictions involving controlled substances.  Factors including the stability of Kent=s home, his acts
or omissions as a parent, and the emotional and physical danger to the children
now and in the future support the trial court=s finding that
termination of Kent=s parental rights to M.C. is in M.C.=s best interest.

Utilizing the appropriate standards of review, we hold that
the evidence is legally and factually sufficient to support the trial court=s finding that
termination of Gaylene=s and Kent=s parental rights
to M.C. and D.K. is in the children=s best
interest.  See H.R.M., 209 S.W.3d at 108;
J.P.B., 180 S.W.3d at 573; C.H., 89 S.W.3d at 28.  We overrule
Gaylene=s second issue and Kent=s second issue.

 

 








IV.  Conclusion

Having overruled each of
Gaylene=s and Kent=s issues, we
affirm the trial court=s judgment
terminating Gaylene=s parental
rights to M.C. and D.K. and terminating Kent=s parental rights to M.C.

 

DIXON W. HOLMAN

JUSTICE

 

PANEL A: 
CAYCE, C.J.; LIVINGSTON and HOLMAN, JJ.

DELIVERED: 
June 12, 2008  











[1]See Tex. R. App. P. 47.4.





[2]The
trial court also terminated the parental rights of Darin Keith, the adjudicated
biological father of D.K., and Jimmy Whitehead, the presumed father of M.C. and
D.K.





[3]TDFPS
initially argues that we should overrule Gaylene=s
first issue because it is multifarious. 
Gaylene=s
first issue is organized in such a way that her specific contentions
challenging the termination order are clear and unambiguous.  We thus decline to overrule her first issue
for allegedly being multifarious.





[4]The
attorney ad-litem for the children even expressed concern that Gaylene was
under the influence of some illegal substance at the time of trial.