

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-07-408-CV

IN THE INTEREST OF M.C.
AND D.K., CHILDREN

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Gaylene C. appeals the termination of her parental rights to her children, M.C. and D.K. Appellant Kent M. appeals the termination of his parental rights to his daughter, M.C. Both Gaylene and Kent challenge the sufficiency of the evidence to support the trial court's family code section 161.001(1) and 161.001(2) findings in the termination order. We will affirm.

---

[1] See TEX. R. APP. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Gaylene is the mother of five-year-old M.C., three-year-old D.K., and three older children. Gaylene left M.C. and D.K. with their grandmother at some point. The grandmother moved to California a few months later and left the children with Janelle S., the children's aunt. Janelle had previously been awarded permanent managing conservatorship of Gaylene's three older children.

On July 10, 2006, Janelle requested that CPS take custody of M.C. and D.K. because she was no longer able or willing to care for them. CPS investigator Cathy Lee did not locate Gaylene until sometime around August 10, 2006. Gaylene initially told Lee that she did not know where M.C. and D.K. were, but she later said that she knew they were with her sister. CPS removed the children from Janelle's care on August 21, 2006.

Lee had concerns about illegal drug use by Gaylene. When Lee located Gaylene on August 10, 2006, Gaylene said that she had used crack cocaine the previous day. Gaylene took a drug test at the request of Appellee Texas Department of Family and Protective Services ("TDFPS") on or about May 21, 2007, and admitted to TDFPS that she had used cocaine. At trial, Gaylene agreed that although she testified at a previous hearing that she had not used drugs for three months, she took a drug test and was "nowhere near clean." Gaylene testified that she never used drugs "around [her] kids or in front of

2

[her] kids," but that she "might have" been under the influence of illegal drugs while she kept her children. When asked when she last used drugs, Gaylene answered, "It's been a month for sure." Gaylene did not complete before trial the service plan that TDFPS prepared for her.

Kent is the alleged biological father of M.C. He was incarcerated when Janelle called CPS in July 2006. CPS did not consider placing the children with Kent after the children's removal because he had just been released from jail and was waiting to return, possibly for a parole violation.

According to Kent, Gaylene does not do drugs around her children, but "she probably has a drug problem" and she "needs help for drugs." Kent used illegal drugs in the past, but he testified that he had not used any since his release from jail. He lived with Gaylene before his incarceration, and he intends to live with her in the future. Kent has multiple convictions for delivery of a controlled substance, one conviction for possession of a controlled substance (for which he is currently on parole), and a misdemeanor conviction for unlawfully carrying a weapon. The controlled substance involved in these convictions was cocaine. Kent did not complete before trial the service plan that TDFPS prepared for him.

The trial court granted TDFPS's petition to terminate the parental rights of Gaylene and Kent. The termination order reflects that the trial court found

3

by clear and convincing evidence that Gaylene knowingly placed or knowingly allowed M.C. and D.K. to remain in conditions or surroundings which endangered their physical or emotional well-being; engaged in conduct or knowingly placed M.C. and D.K. with persons who engaged in conduct which endangered their physical or emotional well-being; and constructively abandoned M.C. and D.K. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E), & (N) (Vernon Supp. 2007). The trial court found that Kent knowingly placed or knowingly allowed M.C. to remain in conditions or surroundings which endangered her physical or emotional well-being; engaged in conduct or knowingly placed M.C. with persons who engaged in conduct which endangered her physical or emotional well-being; and constructively abandoned M.C. *See id*. The trial court further found that termination of Gaylene's and Kent's parental rights was in M.C.'s and D.K.'s best interest.[2]

### III. EVIDENTIARY SUFFICIENCY

Both Gaylene and Kent argue that the evidence is legally and factually insufficient to support the trial court's family code section 161.001(1) findings, and Kent challenges the legal and factual sufficiency of the evidence supporting

---

[2] The trial court also terminated the parental rights of Darin Keith, the adjudicated biological father of D.K., and Jimmy Whitehead, the presumed father of M.C. and D.K.

the trial court's best interest finding as to M.C.; Gaylene challenges only the factual sufficiency of the trial court's best interest finding.[3]

## A.    Standards of Review

A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). In a termination case, the State seeks not just to limit parental rights but to end them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. TEX. FAM. CODE ANN. § 161.206(b); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex.

---

[3] TDFPS initially argues that we should overrule Gaylene's first issue because it is multifarious. Gaylene's first issue is organized in such a way that her specific contentions challenging the termination order are clear and unambiguous. We thus decline to overrule her first issue for allegedly being multifarious.

1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *Holick*, 685 S.W.2d at 20–21; *In re E.M.N.*, 221 S.W.3d 815, 820 (Tex. App.—Fort Worth 2007, no pet.).

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one ground listed under subdivision (1) of the statute and must also prove that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by clear and convincing evidence. TEX. FAM. CODE ANN. §§ 161.001, 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re C.S.*, 208 S.W.3d 77, 83 (Tex. App.—Fort Worth 2006, pet. denied). It is defined as the "measure or degree of proof that will

produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007.

In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We must review all the evidence in the light most favorable to the finding and judgment. *Id.* This means that we must assume that the fact-finder resolved any disputed facts in favor of its finding if a reasonable fact-finder could have done so. *Id.* We must also disregard all evidence that a reasonable fact-finder could have disbelieved. *Id.* We must consider, however, undisputed evidence even if it is contrary to the finding. *Id.* That is, we must consider evidence favorable to termination if a reasonable fact-finder could, and disregard contrary evidence unless a reasonable fact-finder could not. *Id.*

We must therefore consider all of the evidence, not just that which favors the verdict. *Id.* But we cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the fact-finder's province. *Id.* at 573, 574. And even when credibility issues appear in the appellate record, we must defer to the fact-finder's determinations as long as they are not unreasonable. *Id.* at 573.

7

In reviewing the evidence for factual sufficiency, we must give due deference to the fact-finder's findings and not supplant the verdict with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a fact-finder could reasonably form a firm conviction or belief that the parent violated the relevant section 161.001(1) finding and that the termination of the parent's parental rights would be in the best interest of the child. *C.H.*, 89 S.W.3d at 28. If, in light of the entire record, the disputed evidence that a reasonable fact-finder could not have credited in favor of the finding is so significant that a fact-finder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

**B.    Sufficient Evidence—Section 161.001(1)(D) and (E) Findings**

The trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(D). Endangerment is defined as exposing to loss or injury, to jeopardize. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Under subsection (D), it is necessary to examine evidence related to the environment of the child to determine if the environment was the source of

8

endangerment to the child's physical or emotional well-being. *In re D.T.*, 34 S.W.3d 625, 632 (Tex. App.—Fort Worth 2000, pet. denied). To support a finding of endangerment, the parent's conduct does not necessarily have to be directed at the child, and the child is not required to suffer injury. *Boyd*, 727 S.W.2d at 533.

The trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical or emotional well-being was the direct result of the parent's conduct, including acts, omissions, and failures to act. *J.T.G.*, 121 S.W.3d at 125. Termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *Id.*; *D.T.*, 34 S.W.3d at 634.

The specific danger to the child's well-being may be inferred from parental misconduct alone, including conduct that subjects the child to a life of uncertainty and instability. *Boyd*, 727 S.W.2d at 533. A parent's decision to engage in illegal drug use during the pendency of a termination suit, when the

9

parent is at risk of losing a child, supports a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being. *In re J.A.*, No. 02-05-00454-CV, 2006 WL 3114434, at *5 (Tex. App.—Fort Worth Nov. 2, 2006, no pet.) (mem. op.). Conduct that subjects a child to a life of uncertainty and instability also endangers the child's physical and emotional well-being. *See In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet denied).

Because the evidence pertaining to subsections 161.001(1)(D) and (E) is interrelated, we conduct a consolidated review. *In re T.N.S.*, 230 S.W.3d 434, 439 (Tex. App.—San Antonio 2007, no pet.); *J.T.G.*, 121 S.W.3d at 126. The evidence demonstrates that Gaylene has engaged in a deliberate, continuing course of illegal drug use, that Gaylene has a drug problem, and that Gaylene's and Kent's acts and omissions have subjected M.C. and D.K. to a life of uncertainty and instability. Gaylene admitted to using illegal drugs—crack cocaine—on three specific, different occasions: on or about August 9, 2006, the day before CPS removed M.C. and D.K. from Janelle's possession; at some point near the final hearing before trial; and at least a month before the final trial, which was in November 2007.[4] Her use of illegal drugs has not been

---

[4] The attorney ad-litem for the children even expressed concern that Gaylene was under the influence of some illegal substance at the time of trial.

10

limited to these three instances. According to Gaylene, "there is a lot of things that I do that I don't do when I have my [children]." Although Gaylene testified that she never used drugs in front of M.C. and D.K., she tacitly acknowledged using illegal drugs while caring for them when she explained that she "might have" been under the influence of illegal drugs at some point when she had them. Gaylene left M.C. and D.K. with her mother, who left the children with Janelle, who was unable to continue caring for them and called CPS. Gaylene enrolled in an outpatient drug rehabilitation program as part of her court-ordered services but stopped attending after a few weeks.

Kent knows that Gaylene uses illegal drugs. He testified, however, that she does not do drugs in front of her children and, furthermore, that she "probably has a drug problem" when she "leave[s]" her children with her mother, which seems to have occurred on more than one occasion. Kent lived with Gaylene before his incarceration, he allowed M.C. to remain in Gaylene's care despite his knowledge of her continued, illegal drug use, and he intends to live with Gaylene in the future. Kent was incarcerated when Janelle made her CPS report in July 2006, and at the time of trial, he was on parole for his possession of a controlled substance conviction.

Viewing the evidence in the light most favorable to the finding and judgment, we hold that a fact-finder could reasonably form a firm belief or

11

conviction that Gaylene's and Kent's acts, omissions, or failures to act endangered M.C.'s and D.K.'s physical or emotional well-being. *See J.P.B.*, 180 S.W.3d at 573. Moreover, on the entire record, a fact-finder could reasonably form a firm conviction or belief that Gaylene and Kent's acts or omissions violated by clear and convincing evidence the trial court's section 161.001(1)(D) or (E) findings; the disputed evidence that the trial court could not have credited in favor of its section 161.001(1)(D) or (E) findings—consisting primarily of Gaylene's and Kent's testimony that they completed parts of the service plan and that Gaylene does not do illegal drugs in the presence of M.C. and D.K.—is not so significant that the trial court could not reasonably have formed a firm belief or conviction in the truth of its findings. *See H.R.M.*, 209 S.W.3d at 108; *C.H.*, 89 S.W.3d at 28. The evidence is thus legally and factually sufficient to support the trial court's family code section 161.001(1)(D) or (E) findings. Because we have held that the evidence is legally and factually sufficient to support the trial court's section 161.001(1)(D) or (E) findings, we need not determine whether the evidence is sufficient to support the trial court's section 161.001(1)(N) finding. *See J.L.*, 163 S.W.3d at 84 (stating that Petitioner must establish only one ground listed under subsection 161.001(1)). We overrule Gaylene's first issue and Kent's first issue.

12

**C.    Sufficient Evidence—Best Interest Finding**

Prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a). There is also a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(1)    the desires of the child;

(2)    the emotional and physical needs of the child now and in the future;

(3)    the emotional and physical danger to the child now and in the future;

(4)    the parental abilities of the individuals seeking custody;

(5)    the programs available to assist these individuals to promote the best interest of the child;

(6)    the plans for the child by these individuals or by the agency seeking custody;

(7)    the stability of the home or proposed placement;

(8)    the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9)    any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).  These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate.  *C.H.*, 89 S.W.3d at 27.  Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child.  *Id.*  On the other hand, the presence of scant evidence relevant to each factor will not support such a finding.  *Id.*

Here, CPS caseworker Scott Flanigan testified that M.C. and D.K. were together in a "very good" foster home and that termination of Gaylene's and Kent's parental rights was in the children's best interest.  Considering the evidence that Gaylene uses illegal drugs, that she used illegal drugs while caring for M.C. and D.K., that she has not resolved her drug problem since CPS removed M.C. and D.K., that she leaves the children with her mother or some other person to care for them when she uses illegal drugs, and that she failed to complete her service plan and demonstrate an ability to provide a stable home for the children, factors including the emotional or physical danger to the children, the emotional and physical needs of the children, and Gaylene's acts or omissions as a parent support the trial court's finding that termination of Gaylene's parental rights to M.C. and D.K. is in their best interest.

As for Kent, Flanigan testified that he had concerns about returning M.C. to Kent because Kent does not have his own place of residence, he did not complete his service plan, and he will be on parole for another year. Kent testified that he intended to live with Gaylene in the future, which raises the possibility that the children would be passed off again to Gaylene's mother or some other individual due to Gaylene's continued drug use. Kent also lived with Gaylene before his incarceration, yet he allowed M.C. to remain in Gaylene's care knowing that she used illegal drugs. He also has multiple convictions involving controlled substances. Factors including the stability of Kent's home, his acts or omissions as a parent, and the emotional and physical danger to the children now and in the future support the trial court's finding that termination of Kent's parental rights to M.C. is in M.C.'s best interest.

Utilizing the appropriate standards of review, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Gaylene's and Kent's parental rights to M.C. and D.K. is in the children's best interest. *See H.R.M.*, 209 S.W.3d at 108*; J.P.B.*, 180 S.W.3d at 573; *C.H.*, 89 S.W.3d at 28. We overrule Gaylene's second issue and Kent's second issue.

## IV. CONCLUSION

Having overruled each of Gaylene's and Kent's issues, we affirm the trial court's judgment terminating Gaylene's parental rights to M.C. and D.K. and terminating Kent's parental rights to M.C.


                                    DIXON W. HOLMAN
                                    JUSTICE


PANEL A:  CAYCE, C.J.; LIVINGSTON and HOLMAN, JJ.

DELIVERED:  June 12, 2008