**In the Interest of T.N.S., G.R.S., and T.D.S.**

**No. 04–06–00638–CV.**

Court of Appeals of Texas, San Antonio.

June 27, 2007.

Warren Weir, San Antonio, for appellant.

Manuel C. Rodriguez, Jr., S. Elizabeth Elkins, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Joanne M. Eakle, Law Office of Joanne Eakle, San Antonio, for ad litem.

Sitting: KAREN ANGELINI, Justice, PHYLIS J. SPEEDLIN, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

This is an appeal of an Order of Termination of Stephanie Smith's parental rights to her three children, T.N.S., G.R.S., and T.D.S. In two issues on appeal, Smith contends the evidence is legally and factually insufficient to support the following two findings by the trial court: (1) Smith

knowingly placed or knowingly allowed her children to remain in conditions or surroundings that endangered their physical or emotional well-being; and (2) Smith engaged in conduct or knowingly placed her children with persons who engaged in conduct that endangered their physical or emotional well-being. We affirm the trial court's judgment in all respects.

## FACTUAL AND PROCEDURAL BACKGROUND

This parental termination trial was held in September 2006 before the Honorable John D. Gabriel.

At trial, Stephanie Smith testified that she had first become involved with Child Protective Services ("CPS") when she, along with her two children, were involved in a car accident. At the time of the accident, she was eight months pregnant with her third child. Smith was taken to the hospital for treatment where she tested positive for cocaine. Although she was unemployed, she was receiving government assistance, which she used to purchase the cocaine. Smith was referred by CPS to the Drug Court and, as a result, received in-patient treatment at the Patrician Movement. However, she again tested positive for cocaine, and when she gave birth to her baby, he also tested positive for cocaine.

While Smith was living at the Patrician Movement, she had her baby with her. But, when she decided that she did not want to stay there, she called CPS and asked them to pick up the baby. According to Smith, although she had been treated in an inpatient facility three times, she had never been able to complete treatment.

At the time of trial, Smith was working at Comfort Inn and living at Safe Haven, a transitional living facility. She was also trying to gain acceptance in the Fair Weather Family Lodge, but would only be permitted to reside there if her children were living with her.

Smith admitted to having a cocaine addiction for five or six years. During the time her children were removed from her care, she did not give them money, but was able to provide them with some clothes and barrettes. Smith admitted that her children's lives have been placed on hold while she has attempted to control her drug problem. Her last positive drug test was in April of 2006.

Smith testified that, after her first child was born, she was jailed for forgery and two theft cases. While she was in jail, the child stayed with Smith's mother. Later the child told Smith that Smith's mother's boyfriend had molested her.

Francis Feist, a case worker at the Center for Health Care Services, testified that she is Smith's counselor with regard to her substance abuse problem. According to Feist, Smith has been clean and sober for several months, has been going to meetings, has a job, and is getting back into society in a healthy manner.

Carrie Cordova–Diaz, Smith's case manager at Safe Haven, testified that Smith has sought drug and alcohol treatment on an outpatient basis. While at Safe Haven, Smith has complied with the rules and guidelines.

Lisa Griffin, a vocational coordinator at Fair Weather Lodge, testified that the facility is family-oriented. If Smith's rights to her children are not terminated, Smith could enter the facility as long as her children were transitioned into her care within thirty days.

Dr. Thomas Gaines, a psychologist, performed a psychological evaluation of Smith. He testified that Smith was a long-term cocaine user. She had been treated for both schizophrenia and bipolar

disorder, two major psychiatric disorders that significantly impair an individual's ability to function. Smith told Dr. Gaines that she had used cocaine for six years, but that she was not addicted because addiction would mean she could not take care of her kids. Smith had been arrested on three occasions for crimes related to substance abuse or to her need to obtain money for drugs. Smith had been prescribed medications for her disorders. Dr. Gaines gave Smith a score of forty-five on a global assessment of functioning scale, which indicates a significant impairment. In Dr. Gaines's opinion, the risk of neglecting her children is quite high. Dr. Gaines did testify, however, that there is no reason Smith could not take care of her children if she had 24–hour supervision, got treatment, took her medication, and was tested for drug use.

Melinda Barrientez, a Family Drug Court employee, testified that she transported Smith to the Patrician Movement for her initial appointment. Smith had her baby with her. Although Barrientez told Smith that inpatient treatment would be a good idea, Smith was adamant about not going back to inpatient treatment. Barrientez suspected Smith was under the influence of drugs, so she drove Smith to a lab where she was tested. Her suspicion was verified. Although the baby was taken into CPS custody, Smith continued to work with the Drug Court and was able to be reunified with her infant child at the Patrician Movement. Smith, however, left the Patrician Movement without approval, and CPS took custody of the baby.

Belinda White, a CPS investigator, testified that she received the initial referral on Smith when Smith was involved in a car accident and tested positive for cocaine. CPS did a safety plan, placing the children in the care of various relatives and caretakers.

Nicole Gornall, a CPS worker, testified that Smith was told on numerous occasions to complete inpatient services, but she refused. Smith's service plan required her to complete a GED and obtain a beautician's license and a CNA license; however, Smith has not provided proof of compliance with these requirements. Smith has also failed to attend individual counseling, but she has provided proof that she attended a parenting class. Smith has not provided proof of stable housing or employment. In Gornall's opinion, Smith's behavior toward her children constitutes abandonment, and she thinks it would be in the best interest of the children that Smith's rights be terminated.

After hearing all the evidence, the trial court terminated Smith's rights to her three children. In its Order of Termination, the trial court found that termination was in the children's best interest and that Smith had violated nine statutory provisions listed in section 161.001 of the Family Code.

## Discussion

On appeal, Smith does not dispute the best interest finding nor does she dispute seven of the nine section 161.001 statutory violations found by the trial court. Instead, she confines her argument to subsections 161.001(D) and (E) of the Family Code.[1]

---

1. Subsections 161.001(D) and (E) provide that a trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence "(1) that the parent has ... (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;" or that the parent has "(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child."

Only one finding under section 161.001 is necessary to support a termination order. *In re A.V.*, 113 S.W.3d 355, 362 (Tex.2003). Since Smith has not challenged each of the trial court's findings, we would ordinarily affirm the trial court's Order of Termination without addressing Smith's sufficiency arguments pertaining to only two of the trial court's findings. Smith, however, is not asking for a complete reversal of the trial court's termination order. Instead, Smith argues that she is entitled to modification of the judgment if we find the evidence insufficient to support the trial court's findings under subsections 161.001(D) and (E) because such findings may affect her rights to any children who may be born in the future under subsection 161.001(1)(M).[2] Thus, we will address Smith's sufficiency arguments to determine whether Smith is entitled to modification of the trial court's Order of Termination.

◼ We apply the clear and convincing standard of proof in parental termination cases. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex.2002). Clear and convincing evidence is defined as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM.CODE ANN. § 101.007 (Vernon 2002); *In re C.H.*, 89 S.W.3d 17, 25 (Tex.2002). In a legal sufficiency review in a parental termination case, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or convic-

tion that its finding was true. *In re J.F.C.*, 96 S.W.3d at 266. In a factual sufficiency review in a parental termination case, we consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief of conviction, then the evidence is factually insufficient. *Id.*

◼ Endangerment is defined as exposing to loss or injury, to jeopardize. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex.App.-Fort Worth 2003, no pet.). Under subsection 161.001(1)(D), the inquiry is related to whether the environment of the children is the source of endangerment to the children's physical or emotional well-being. *Id.* A parent's conduct in the home can create such an environment. *Id.; In re W.S.*, 899 S.W.2d 772, 776 (Tex.App.-Fort Worth 1995, no writ). A parent's illegal drug use and drug-related criminal activity may also amount to creating surroundings that endanger the children's physical or emotional well-being. *In re J.T.G.*, 121 S.W.3d at 125; *see In re S.D.*, 980 S.W.2d 758, 763 (Tex.App.-San Antonio 1998, pet. denied).

◼ The inquiry under subsection 161.001(1)(E) relates to whether the endangerment of the child is the direct result of the parent's conduct. *In re J.T.G.*, 121 S.W.3d at 125; *In re R.D.*, 955 S.W.2d 364, 368 (Tex.App.-San Antonio 1997, pet. de-

---

TEX. FAM. CODE ANN. § 161.001(1)(D), (E) (Vernon Supp.2006).

2. Subsection 161.001(1)(M) provides that a trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence "(1) that the parent has ... (M) had his or her parent-child relation-

ship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E) or substantially equivalent provisions of the law of another state." TEX. FAM. CODE ANN. § 161.001(1)(M) (Vernon Supp.2006).

nied). And, termination under subsection (E) must be based on, not just a single act or omission, but a voluntary, deliberate, and conscious course of conduct by the parent. *In re J.T.G.*, 121 S.W.3d at 125.

To support a finding of endangerment, the parent's conduct does not necessarily have to be directed at the child nor is the child required to actually suffer injury. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex.1987). And, we look at the parent's conduct both before and after the child's birth. *In re D.M.*, 58 S.W.3d 801, 812 (Tex.App.-Fort Worth 2001, no pet.). Thus, "[a] mother's use of drugs during pregnancy may amount to conduct that endangers the physical and emotional well-being of the child." *In re J.T.G.*, 121 S.W.3d at 125. "Drug addiction and its effect on a parent's life and ability to parent may establish an endangering course of conduct as well." *Id.* at 125–26.

Because the evidence pertaining to subsections 161.001(1)(D) and (E) are interrelated, we conduct a consolidated review. *Id.* at 126. The evidence shows that Smith used cocaine while pregnant with her third child and that her baby was, in fact, born testing positive for cocaine. *See In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.-Forth Worth 2003, no pet.) (holding that appellant posed an emotional and physical danger to her children now and in the future because she exposed her unborn children to illegal drugs, has been a drug addict for thirteen years, and has enrolled in four different drug treatment programs but was unable to complete any of them). Further, although there is no evidence that the car accident was caused by Smith's use of cocaine, she was nevertheless driving with her children in the car while she had cocaine in her system. The evidence also shows that Smith had a criminal history related to drug use. *See In re D.C.*, 128

S.W.3d 707, 715–16 (Tex.App.-Fort Worth 2004, no pet.) (holding that parent's illegal drug use and drug-related criminal activity supported finding of endangerment).

The evidence further establishes that, although Smith had not tested positive for cocaine for about four months prior to trial, she did suffer from a cocaine addiction. Smith testified she had been addicted to cocaine for five or six years and that her children's lives had been put on hold while she tried to control her addiction. Further, Smith admitted to using her family's government assistance money to buy drugs. Smith's course of conduct relating to her addiction, including incarceration on three occasions and her repeated attempts and failures to complete rehabilitation programs, indicate instability and uncertainty for her children. *See In re S.D.*, 980 S.W.2d 758, 763 (Tex.App.-San Antonio 1998, pet. denied) (holding that when child is routinely subjected to the probability of being left alone because parents are jailed due to illegal drug use or committed to rehabilitation programs, that child is subjected to a life of uncertainty and instability, which endangers the child's physical and emotional well-being).

Applying the appropriate standard of review for legal and factual sufficiency of the evidence, we find the evidence of Smith's behavior supports the trial court's findings that Smith violated . subsections 161.001(1)(D) and (E).

### Conclusion

Having determined that the evidence was legally and factually sufficient, we affirm the trial court's Order of Termination in all respects.