

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-09-005-CV

IN THE INTEREST OF A.O., A CHILD

------------

FROM THE 325TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Owen O. appeals the trial court's judgment terminating his parental rights to his daughter, Amy.[2] In five issues, Owen argues that the trial court erred by finding that he failed to admit his paternity, that the trial court abused its discretion by making a finding of termination based upon a ground that was not pled or tried by consent, and that there is no evidence or

---

[1] *See* Tex. R. App. P. 47.4.

[2] Pursuant to Texas Rule of Appellate Procedure 9.8(b)(2), we use aliases for the names of the children identified in the opinion.

insufficient evidence to support the trial court's family code subsections 161.001(1)(D), (E), and (N) termination ground findings. We will affirm.

## II. FACTUAL BACKGROUND

Owen is Amy's biological father. Leticia S. is Amy's mother. Leticia is also the mother of twins born in November 2001. Owen is not the father of the twins.

Owen and Leticia started dating in October 2004 and began living together a few months thereafter.[3] Leticia was pregnant with Jackie at the time. Jackie tested positive for cocaine when she was born. Leticia relinquished her rights to Jackie in February 2006, and Jackie was adopted in May 2007.[4] Owen and Leticia never married.

In October 2005, when Leticia was pregnant with A.O., Owen and Leticia had an argument during which Owen threatened to ignite a pile of clothes that had been sprayed with lighter fluid. As a result of this incident, in January 2006, Owen was placed on ten years' deferred adjudication community supervision for the offense of attempted arson.

---

[3] According to Owen, however, there were "separations" because he and Leticia "had minor arguments."

[4] There is no allegation or evidence that Owen is Jackie's father.

Amy was born in April 2006.  Leticia used cocaine after A.O. was born.  Owen used marijuana, and he used cocaine with Leticia.

Approximately one year after A.O.'s birth, in April 2007, the trial court revoked Owen's community supervision on the grounds that he had tested positive for cocaine and TCH, failed to attend and complete drug treatment, failed to report to his community supervision officer, failed to timely notify his community supervision officer of a change of address, and failed to make payments associated with his community supervision.  The trial court adjudicated Owen guilty of attempted arson and sentenced him to four years' confinement.

In June 2007, about two months after the revocation of Owen's community supervision, Texas Department of Family and Protective Services ("TDFPS") investigated a referral involving Leticia, the twins, and Amy, all of whom were living together.  The investigator visited Leticia's apartment and observed that it was in disarray, that it contained a lot of trash, that it had ashtrays full of cigarettes and cigars, that there was a lot of smoke, and that there were approximately ten empty gallon-sized liquor bottles on the living room floor.  Leticia told the investigator that she was being evicted from the apartment and that she would probably test positive for marijuana if tested.  Later that same month, after CPS received Leticia's drug test results, TDFPS

3

removed all three of the children from Leticia's care and filed its petition for protection of children, for conservatorship, and for termination in a suit affecting the parent-child relationship.

At the bench trial in November 2008, Owen admitted using illegal drugs. He testified that his projected release date from prison is December 9, 2010, and that he is eligible for parole December 8, 2008. On December 18, 2008, the trial court signed an order terminating the parental rights of Owen and Leticia to Amy. The trial court found by clear and convincing evidence that Owen knowingly placed or knowingly allowed Amy to remain in conditions or surroundings that endangered her physical or emotional well-being, that Owen engaged in conduct or knowingly placed Amy with persons who engaged in conduct that endangered Amy's physical or emotional well-being, that Owen constructively abandoned Amy, that Owen failed to admit his paternity, that Owen knowingly engaged in criminal conduct that resulted in his conviction of an offense and confinement or imprisonment and inability to care for Amy for not less than two years from the date of the filing of the petition, and that termination of the parent-child relationship between Owen and Amy is in Amy's best interest. *See* Tex. Fam. Code Ann. §§ 161.001(1)(D), (E), (N), (Q), (2), 161.002(b)(1) (Vernon 2008). This appeal followed.

4

### III. BURDEN OF PROOF AND STANDARD OF REVIEW

A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). In a termination case, the State seeks not just to limit parental rights but to erase them permanently — to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (Vernon 2008); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *Holick*, 685 S.W.2d at 20–21; *In re M.C.T.*, 250 S.W.3d 161, 167 (Tex. App. — Fort Worth 2008, no pet.).

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one ground

listed under subdivision (1) of the statute and must also prove that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Termination decisions must be supported by clear and convincing evidence. Tex. Fam. Code Ann. §§ 161.001, 161.206(a). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (Vernon 2008). Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and modification).

In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We must review all the evidence in the light most favorable to the finding and judgment.

*Id.* This means that we must assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so. *Id.* We must also disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We must consider, however, undisputed evidence even if it is contrary to the finding. *Id.* That is, we must consider evidence favorable to termination if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.*

We must therefore consider all of the evidence, not just that which favors the verdict. *Id.* But we cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province. *Id.* at 573, 574. And even when credibility issues appear in the appellate record, we must defer to the factfinder's determinations as long as they are not unreasonable. *Id.* at 573.

In reviewing the evidence for factual sufficiency, we must give due deference to the factfinder's findings and not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated the relevant conduct provisions of section 161.001(1) and, if challenged, that the termination of the parent-child relationship would be in the best interest of the child. *C.H.*, 89 S.W.3d at 28.

7

If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

### IV. EVIDENTIARY SUFFICIENCY OF ENDANGERMENT FINDINGS

In his fourth and fifth issues, Owen argues that there was no evidence or insufficient evidence to support the trial court's family code subsections 161.001(1)(D) and (E) endangerment findings.

Endangerent means to expose to loss or injury, to jeopardize. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). The trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endanger the physical or emotional well-being of the child. Tex. Fam. Code Ann. § 161.001(1)(D). Under subsection (D), it is necessary to examine evidence related to the environment of the child to determine if the environment was the source of endangerment to the child's physical or emotional well-being. *In re D.T.*, 34 S.W.3d 625, 632 (Tex. App.—Fort Worth 2000, pet. denied).

8

Conduct of a parent in the home can create an environment that endangers the physical and emotional well-being of a child. *J.T.G.*, 121 S.W.3d at 125.

The trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical or emotional well-being of the child. Tex. Fam. Code Ann. § 161.001(1)(E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical or emotional well-being was the direct result of the parent's conduct, including acts, omissions, and failures to act. *J.T.G.*, 121 S.W.3d at 125. Termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *Id.*; *D.T.*, 34 S.W.3d at 634.

As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied). To support a finding of endangerment, the parent's conduct does not necessarily have to be directed at the child, and the child is not required to suffer injury. *Boyd*, 727 S.W.2d at 533. The specific danger to the child's well-being may be inferred from parental misconduct alone, and to determine whether

9

termination is necessary, courts may look to parental conduct both before and after the child's birth. *Id.*; *In re D.M.*, 58 S.W.3d 801, 812–13 (Tex. App.—Fort Worth 2001, no pet.). Also, a factfinder may infer from past conduct endangering the well-being of the child that similar conduct will recur if the child is returned to the parent. *In re M.M.*, No. 02-08-00029-CV, 2008 WL 5195353, at *6 (Tex. App.—Fort Worth Dec. 11, 2008, no pet.) (mem. op.).

Parental and caregiver illegal drug use supports a conclusion that the children's surroundings endanger their physical or emotional well-being. *J.T.G.*, 121 S.W.3d at 125; *S.D.*, 980 S.W.2d at 763; *M.M.*, 2008 WL 5195353, at *6 (stating that drug use and its effect on a parent's life and that parent's ability to parent may establish an endangering course of conduct). Evidence of criminal conduct, convictions, and imprisonment prior to the birth of a child will support a finding that a parent engaged in a course of conduct that endangered the child's well-being. *J.T.G.*, 121 S.W.3d at 133. While imprisonment alone does not constitute a continuing course of conduct that endangers the physical or emotional well-being of a child, it is a fact properly considered on the issue of endangerment. *Boyd*, 727 S.W.2d at 533–34.

Because the evidence pertaining to subsections 161.001(1)(D) and (E) is interrelated, we conduct a consolidated review. *In re T.N.S.*, 230 S.W.3d 434,

10

439 (Tex. App.—San Antonio 2007, no pet.); *J.T.G.*, 121 S.W.3d at 126. The evidence demonstrates that Owen used illegal drugs before going to prison. Owen admitted to using cocaine with Leticia, and his community supervision was revoked in part because he tested positive for cocaine and THC.[5] Although Owen's community supervision was revoked in part because he tested positive for cocaine, he confirmed that his drug of choice at the time was marijuana. Owen's community supervision was revoked in April 2007, approximately one year after A.O. was born. Thus, part of Owen's illegal drug use occurred after A.O.'s birth.

Owen knew that Leticia used illegal drugs, yet he did not take steps to protect Amy from this endangering environment. Specifically, Owen testified that Leticia began using drugs again a few months after Jackie, who tested positive for cocaine at birth, was born. Owen agreed that Amy was probably conceived sometime around July 2005 and that Leticia was probably using drugs while she was pregnant with Amy. Owen confirmed that Leticia continued to use cocaine after Amy was born. He also testified that Leticia used marijuana.

---

[5] The portion of the order adjudicating Owen's guilt that sets forth the grounds for the revocation contains two "paragraphs," or "counts," that Owen tested positive for cocaine.

11

The criminal conduct for which Owen was placed on community supervision occurred while Leticia was pregnant with Amy. Owen's community supervision was revoked, and his guilt for the offense of attempted arson was adjudicated on the multiple grounds set forth in the judgment adjudicating his guilt. Owen testified that he had been incarcerated for almost two years and that his projected release date from prison is December 9, 2010. He agreed that it is not fair to Amy "for her to have to sit around in foster care for the next year or two years and wait for [him] to get out of jail."

Owen directs us to evidence that he participated in Leticia's prenatal care, that he was present when Amy was born, that he worked steadily and supported the family, and that he was a "good dad." He also points out that Amy was a "healthy, happy baby." Under the appropriate standards of review, however, this evidence does not render the evidence legally or factually insufficient to support the trial court's subsections 161.001(1)(D) and (E) findings.

In light of the above evidence, we hold that the trial court was entitled to make its family code subsections 161.001(1)(D) and (E) findings. *See J.T.G.*, 121 S.W.3d at 125; *D.T.*, 34 S.W.3d at 632; *S.D.*, 980 S.W.2d at 763; *M.M.*, 2008 WL 5195353, at *6. Accordingly, giving due deference to the trial court's findings, we hold that a reasonable trier of fact could have

formed a firm belief or conviction that Owen engaged in conduct and knowingly placed or knowingly allowed Amy to remain in conditions that endangered her physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E); *J.P.B.*, 180 S.W.3d at 573; *C.H.*, 89 S.W.3d at 28. We hold that the evidence is legally and factually sufficient to support the trial court's environmental endangerment and course-of-conduct endangerment findings. We overrule Owen's fourth and fifth issues.

Owen does not challenge the trial court's best-interest finding. Because the evidence is legally and factually sufficient to support one ground for termination under section 161.001(1), we need not consider Owen's first, second, and third issues, which relate to the other termination grounds found by the trial court. *See* Tex. R. App. P. 47.1.

## V. CONCLUSION

Having overruled Owen's fourth and fifth issues, we affirm the trial court's judgment terminating the parent-child relationship between Owen and Amy.

BILL MEIER
JUSTICE

PANEL: LIVINGSTON, DAUPHINOT, and MEIER, JJ.

DELIVERED: June 25, 2009

13