# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00156-CV

**Dean Warner-Lapasinskas and Jamie Sanders, Appellants**

**v.**

**Texas Department of Family and Protective Services, Appellee**

## FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
## NO. 232,553-B, HONORABLE RICK MORRIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants Dean Warner-Lapasinskas and Jamie Sanders appeal a final decree terminating their parental rights to their infant child L.L.L. and awarding sole managing conservatorship to the Texas Department of Family and Protective Services. They bring a single issue on appeal complaining that the trial court abused its discretion by proceeding to a final hearing on termination without first conducting at least two permanency hearings. Concluding that no abuse of discretion is shown on this record, we will affirm the decree.

## BACKGROUND

The underlying facts are not disputed on appeal. Sanders and Warner-Lapasinskas are the biological parents of L.L.L., born October 11, 2008. L.L.L. tested positive for both methamphetamine and marihuana at birth. During the final hearing, Warner-Lapasinskas admitted

that he and Sanders had used methamphetamine during Sanders's pregnancy and that he had been purchasing the substance "every couple of days" with his unemployment payments.

The infant's positive drug test results prompted an investigation by the Department. This was not Sanders's first involvement with the Department. Two or three years previously, it had removed two of Sanders's older children for reasons related to Sanders's drug use. As of the final hearing regarding L.L.L., these children had not been returned to Sanders.

As Warner-Lapasinskas later admitted during the final hearing, he was dishonest with the Department in denying drug use when the investigation began. Consequently, the Department initially concluded that while Sanders presented a risk to the infant due to her drug abuse, Warner-Lapasinskas did not. On October 16, the Department filed a petition for temporary orders that Sanders move out of the home she and Warner-Lapasinskas shared and obtain drug treatment and that Warner-Lapasinskas provide a safe home environment for L.L.L. and supervise any visitation Sanders had with the infant.

However, on October 21, claiming that it had just received positive results on a drug test administered to Warner-Lapasinskas the preceding week, the Department filed a petition seeking to terminate both appellants' parental rights and obtained emergency orders granting it temporary managing conservatorship of L.L.L. pending a full adversary hearing. *See* Tex. Fam. Code Ann. §§ 262.101-.103 (West 2008).[1]  The adversary hearing was ultimately held on

---

[1]  We will cite to the version of the family code that was in effect during the underlying proceedings. In 2009, the legislature made several substantive amendments to family code chapters 262 and 263 that are not relevant here.

2

November 18. *See id*. § 262.201 (West 2008).[2] At the hearing, appellants and the attorney who was jointly representing them, the Department, L.L.L.'s attorney ad litem, and L.L.L.'s guardian ad litem each personally signed an agreement, approved by the trial judge, that appellants "agree to work services with the Department," that the Department would continue as L.L.L.'s temporary managing conservator, and that appellants would be allowed to have weekly supervised visits with L.L.L. after they had submitted three consecutive "clean" weekly drug tests. The trial court set a status hearing for December 3. The court subsequently entered written agreed temporary orders wherein it found that "there is a danger to the physical health or safety of the child caused by the acts or failure to act of Respondent[s] and therefore parental possession of the child is not in the best interest of the child," ordered that the Department would continue as L.L.L.'s temporary managing conservator for the next 180 days, placed the child in substitute care pending further orders of the court, and imposed other requirements consistent with the parties' agreement, including the weekly visitation made contingent on three consecutive "clean" weekly drug tests. The court also found that appellants were personally "informed in open court that parental and custodial rights and duties may be subject to restriction or to termination unless the parents are willing and able to provide the child with a safe environment."

In advance of the hearing, on December 1, the Department filed a family service plan with the stated permanency goal of family reunification by October 26, 2009. *See id*. §§ 263.101, .102 (West 2008). The Department indicated that it had made multiple unsuccessful attempts

---

[2] This proceeding and others through the final hearing were conducted by an associate judge on referral from the district court. Following the final hearing, the associate judge prepared a proposed termination decree that the district court adopted in its entirety.

3

since the previous hearing to meet with appellants regarding the plan and had ultimately filed it without their signatures. *See id*. § 263.103 (West 2008). The plan required appellants to (1) submit to random drug testing on a weekly basis; (2) participate in supervised visitation with L.L.L. after they submitted three consecutive clean weekly drug tests; (3) provide and maintain a "safe and appropriate home . . . and demonstrate stability"; (4) "demonstrate the ability to meet the child's basic needs and ensure the safety of the child"; (5) participate in a parenting assessment, which they would begin by December 31 and complete by February 28, 2009; (6) participate in a drug and alcohol assessment and follow all recommendations, which they would begin by December 31; (7) participate in counseling regarding "abuse/neglect issues," which they would begin by December 31; and (8) submit to a psychological evaluation by February 28.

On December 3, the trial court conducted the status review hearing. *See id*. § 263.201-.202 (West 2008). It adopted "the permanency plans and recommendations for the child, set out in the service plans filed with the Court" and ordered appellants to follow them. *See id*. § 263.105 (West 2008), .202. The court again found that appellants "were advised by the Court that progress under the service plan will be reviewed at all subsequent hearings, including a review of whether the parties have acquired or learned any specific skills or knowledge stated in the service plan." The trial court set "the first permanency hearing" for March 10, 2009 to evaluate appellants' compliance with the plan. *See id*. § 263.304(a) (West 2008).

Meanwhile, it is undisputed that appellants continued to use methamphetamine in violation of the trial court's orders and despite the risk such conduct presented to their ability to reunite with L.L.L. The conduct also violated the terms and conditions of a three-year deferred-

4

adjudication term Warner-Lapasinskas had received in August 2008 in Harris County for the felony offense of failure to stop and render aid.

In early December, Sanders failed a weekly drug test, testing positive for methamphetamine. Also, Warner-Lapasinskas tested positive for the substance during two consecutive weekly tests. A hearing on temporary orders was held on December 30. Following the hearing, the trial court modified its prior temporary orders to the extent of requiring appellants to submit to random drug and alcohol testing at least once per week at their own expense (it had previously required the Department to pay for the testing), permitting the Department to require additional random drug and alcohol testing at its own expense, specifically mandating that appellants "not use drugs while this action was pending," and ordering that the Department was to discontinue any visitation if Sanders or Warner-Lapasinskas tested positive or refused to participate in testing. The court also cancelled the March 10 initial permanency hearing and instead set a final termination hearing for February 17, 2009. *See id*. § 263.304(b), .401(a) (West 2008); *cf*. *id*. § 262.2015 (West 2008) (procedures for accelerating final hearing and waiving requirement of reasonable efforts to return child).

Warner-Lapasinskas admitted that his methamphetamine use continued until he was incarcerated on January 6, 2009, as a result of the State filing a motion to revoke his deferred adjudication on grounds that included his drug use. He testified that he remained in jail until January 22 or 23, when he was released with orders to enroll in an "intensive outpatient program."

The final hearing went forward as scheduled on February 17. At the outset of the proceeding, appellants' counsel orally moved for a continuance. Warner-Lapasinskas testified in

support of the motion.  While conceding that he had "made some mistakes at the beginning of this" and acknowledging several of the undisputed facts detailed above regarding his and Sanders's drug use, Warner-Lapasinskas insisted that he had begun a turnaround following his incarceration. He urged that he had been "clean" for over six weeks (counting the 17 days he had been incarcerated), and that while he had missed tests during that period, he had undergone a test on February 3, the results of which he did not know but were being sent to the Department.  Warner-Lapasinskas professed that he was in the process of starting intensive drug treatment through Narcotics Anonymous (NA) and the Veterans' Administration, would undergo inpatient treatment if the VA recommended it, was also starting counseling, and was set to begin a job that week with an employer with whom he had formed a relationship through NA.  He added that he had been progressing in his refurbishment of two connected mobile homes that would serve as his family's home, although he acknowledged that his work had been interrupted and delayed by his incarceration and was more than two months from completion.

As for Sanders, she was not personally present at trial and did not testify.  Warner-Lapasinskas attributed Sanders's absence to outstanding arrest warrants for her failure to pay child support she owed on children other than L.L.L.  Warner-Lapasinskas also acknowledged that a provider had recommended inpatient drug treatment for Sanders.

Warner-Lapasinskas pleaded that "it's coming together" and "I just want the opportunity to complete these programs and work these programs and show the court that there has been a drastic change in our lives and my life."  At the conclusion of Warner-Lapasinskas's testimony, appellants rested.  The trial court then denied the continuance.

6

The trial court proceeded to hear testimony on the merits of the termination issues. As its sole witness, the Department called Morgan Milloway, L.L.L.'s caseworker since October 2008. In addition to describing the results of the Department's investigation of Sanders and Warner-Lapasinskas's drug use, Ms. Milloway testified that neither Warner-Lapasinskas nor Sanders had yet met the requirement of three consecutive "clean" weekly drug tests—the prerequisite for obtaining visitation with L.L.L.—since it was imposed in mid-November. She added that besides failing two drug tests in December, Warner-Lapasinskas had missed two other tests that month and that neither he nor Sanders had submitted any tests in January.

Milloway characterized appellants' compliance with other requirements of the service plan as "minimal." When asked if appellants had started the counseling they were required to begin by December 31, Milloway testified, "Not that I know of." When asked if they had completed their psychological exam, which they were required to complete by February 28, Milloway testified, "No. In fact, they did tell me they had another appointment set up, but they have not done that yet." Milloway also indicated that while both Warner-Lapasinskas and Sanders had completed their required parenting assessment, both "scored in the high to medium risk for parenting." She further observed that appellants' employment and housing situations were "unstable."

Milloway also indicated that L.L.L. had hearing problems. She explained that the baby was currently living in a foster home with a family who was ready and willing to adopt her. Milloway opined that "with the history of the drug use and their instability so far in this case," she did not believe that appellants "have the ability to parent this child." She added that the sole family member who had expressed an interest in caring for L.L.L.—Sanders's mother—had been ruled out

7

because of a pending assault charge. Milloway urged that appellants' parental rights be terminated so the foster family could proceed with adopting L.L.L.

Following Milloway's testimony, the Department rested. The only witness to testify for appellants other than Warner-Lapasinskas, whose testimony the trial court also considered with regard to the merits, was Diana Powell, Sanders's mother. Ms. Powell admitted that she had a pending assault charge, although she expressed the belief that it would be dismissed. Powell acknowledged that appellants had not been able to complete the service plan, but she believed they would be able to complete it and care for the child "now that they got their heads right." Powell also indicated a willingness to care for L.L.L. if needed and to assist appellants with living expenses.

At the conclusion of testimony, L.L.L.'s attorney ad litem and CASA representative concurred in the Department's recommendation of termination. The trial court found by clear and convincing evidence that appellants had engaged in conduct which endangered L.L.L.'s physical and emotional well-being and that it was in the child's best interest that appellants' parental rights be terminated. The final decree was filed on March 6, 2009. This appeal followed.

**DISCUSSION**

In their sole issue on appeal, appellants argue that the trial court abused its discretion in proceeding to a final hearing on termination without first conducting at least two permanency hearings, thereby "depriving the natural parents of the statutory warnings and opportunity to comply with the service plan." In support, appellants contend that the family code entitled them to an opportunity to comply with their service plan, then an initial permanency hearing evaluating their progress under the plan, followed by at least one subsequent permanency hearing, before the

8

trial court could proceed to the final hearing.  Consequently, appellants reason, the trial court had no discretion to forego holding an initial and subsequent permanency hearing.

We have examined the record and find no indication that appellants ever preserved this complaint below.  Although the trial court set the final hearing date by an order dated December 31, the first mention in the record of any objection to the setting or request to postpone it appears in the reporter's record from the February 17 hearing.  At the outset of the hearing, the trial court acknowledges that appellants were moving to continue the hearing.  It is undisputed that appellants asserted their continuance motion only orally and never filed a written motion.  The reporter's record reflects only that appellants, through Warner-Lapasinskas's testimony, pleaded for "the opportunity to complete these programs and work these programs and to show the court that there has been a drastic change in our lives and in my life" despite their prior "mistakes."  The sole argument relating to any grounds for the continuance is the following statement by appellants' trial counsel, who urged, after the close of testimony on the merits:

> Your Honor, what I suppose just keeps coming up to the front of my mind is four months.  In cases in this court it's taken us four months just to get a home study done.  That then triggers my request—triggered my request for the continuation of this; to give the couple more time.  I think that their future is positive even though their past has been negative.  Does their past standing alone without considering the future justify in terminating the parental rights of this couple with their child and the side effect, of course, is [] denying the maternal grandmother the opportunity to visit with this child.[3]

---

[3] These statements prompted the Department's counsel to argue that in "[f]our months these parents haven't got on the ball and done anything" other than using drugs and getting arrested, and that even that period was "too long for this baby to wait."

9

These arguments are addressed solely to the trial court's equitable discretion. Nowhere did appellants advise the trial court of any contention that the family code mandated that it hold permanency hearings before proceeding to the final hearing. Nor does the record demonstrate that appellants ever raised such an argument at any subsequent juncture below.

As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. Tex. R. App. P. 33.1(a)(1)(A); *see also In re B.L.D.*, 113 S.W.3d 340, 350-51 (Tex. 2003) (holding that rules governing error preservation must be followed in cases involving termination of parental rights). Additionally, in appeals of final orders rendered under chapter 263, "[t]he appellate court may not consider any issue that was not specifically presented to the trial court in a timely filed statement of the points on which the party intends to appeal or in a statement combined with a motion for new trial." Tex. Fam. Code Ann. § 263.405(i) (West 2008). Here, the record does not reflect that appellants ever brought this specific complaint to the attention of the trial court, either before or during the final hearing or in their statement of points filed after the hearing. Accordingly, we conclude that appellants waived any error in the district court's decision to forego a permanency hearing.

To the extent that appellants' arguments can be construed as re-urging the arguments they made in the trial court, we conclude that no abuse of discretion is shown. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002) (trial court's order denying

10

motion for continuance will not be disturbed unless trial court has committed clear abuse of discretion) (citing *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986)). The decree terminating appellants' parental rights was based on findings by clear and convincing evidence that (1) appellants engaged in conduct and knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; and (2) termination is in the best interest of the child. *See* Tex. Fam. Code Ann. § 161.001(1)(E), (2) (West Supp. 2009). Appellants advocated a continuance, in essence, so they would have additional time to develop favorable evidence on these issues.

Endangerment means to expose to loss or injury, to jeopardize. *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). A history of drug addiction may establish an endangering course of conduct, even if the parent is drug-free at the time of trial. *In re T.N.S.*, 230 S.W.3d 434, 439 (Tex. App.—San Antonio 2007, no pet.). Also, a mother's use of drugs during pregnancy may amount to conduct that endangers the physical and emotional well-being of the child. *In re K.M.B.*, 91 S.W.3d 18, 25 (Tex. App.—Fort Worth 2002, no pet.). Furthermore, a child's emotional and physical well-being can be endangered when a parent's drug addiction leads to uncertainty and instability in the child's life, such as the possibility of being left alone when a parent enters a drug-rehabilitation program. *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied).

We have previously summarized the undisputed evidence of Warner-Lapasinskas and Sanders's use of drugs both before and after Sanders's pregnancy. At birth, L.L.L. tested

11

positive for amphetamine and marihuana. This is undisputed evidence that appellants engaged in conduct that had endangered L.L.L.'s physical or emotional well-being. This ground for termination would exist regardless when the final hearing was held, as long as the hearing took place within the statutory deadline. *See* Tex. Fam. Code Ann. § 263.401(a).

Nor was best interest a close call.[4] Sanders had previously had two other children removed by the Department for reasons related to her drug use. Despite the health risks to her unborn child, her drug use and that of Warner-Lapasinskas's continued through her pregnancy. L.L.L. was ultimately born with both methamphetamine and marihuana in her system. After the Department took custody of L.L.L., Warner-Lapasinskas and Sanders's methamphetamine use continued even though their future with L.L.L. (not to mention Warner-Lapasinskas's freedom) depended on their avoiding drug use. Even when their right to supervised visitation with L.L.L. depended on it, neither ever met the requirement of submitting three consecutive "clean" weekly drug tests, and both violated their service plan in missing weekly tests.

Morgan Milloway, the current conservatorship caseworker for the child, testified that L.L.L. had been placed in a foster home and that the foster parents were "ready to adopt her" and were "100 percent" sincerely committed to the child. Appellants, in contrast, had made

---

[4] The best interest of the child is established by considering such factors as: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parenting abilities of the parties seeking custody; (5) the programs available to assist these persons; (6) the plans for the child by the parties seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions committed by the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions committed by the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

12

"minimal" efforts to comply with their service plan. Also, according to Milloway, appellants "scored in the high to medium risk for parenting." Making matters even worse were criminal proceedings ongoing against Warner-Lapasinskas, Sanders, and even Sanders's mother, the one family member potentially available to assist the couple in caring for L.L.L. In the face of this evidence, appellants could offer only Warner-Lapasinskas's professions that appellants would do better in the future.

The trial court, as fact finder, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *Navasota Res., Ltd. v. Heep Petroleum, Inc.*, 212 S.W.3d 463, 468 (Tex. App.—Austin 2006, no pet.); *Raymond v. Rahme*, 78 S.W.3d 552, 556 (Tex. App.—Austin 2002, no pet.). On this record, we cannot say that the trial court abused its discretion in denying appellants' continuance motion.

We overrule appellants' sole issue on appeal.

## CONCLUSION

We affirm the decree of termination.

_____

Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed:  December 9, 2009

13