

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00620-CV

**IN THE INTEREST OF B.W.**, a Child

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-PA-02286
Honorable Martha B. Tanner, Judge Presiding

Opinion by:       Patricia O. Alvarez, Justice

Sitting:          Sandee Bryan Marion, Justice
                  Marialyn Barnard, Justice
                  Patricia O. Alvarez, Justice

Delivered and Filed: February 19, 2014

AFFIRMED

Appellant T.Z. appeals the trial court's order terminating her parental rights to her child

B.W.  T.Z. asserts the evidence was not legally or factually sufficient for the trial court to find by

clear and convincing evidence that she met section 161.001(1)'s conditions (D), (E), or (O), or that

terminating her parental rights was in B.W.'s best interest.  *See* TEX. FAM. CODE ANN. § 161.001

(West Supp. 2013).  We affirm the trial court's order.

#### BACKGROUND

From the time B.W. was born, T.Z. was in an abusive relationship with B.W.'s father.

Although T.Z. was most often the victim, in December 2011, T.Z. was arrested for assaulting

B.W.'s father, and the Department of Family and Protective Services received a referral alleging

T.Z. was not properly supervising B.W.  After her arrest, T.Z. called her step-mother to take care

of B.W., and B.W. began living with T.Z.'s parents, and T.Z. ended her relationship with B.W.'s father. In March 2012, the case was referred to the Department's Family Based Safety Services program.

The Department discussed with T.Z. a plan for B.W. to return to live with her, but T.Z.'s case worker had repeated difficulty contacting T.Z. During this initial service plan period, T.Z. moved at least four times, only had intermittent phone service, and did not maintain contact with the Department. After T.Z. failed to comply with her several requirements in her initial service plan, in September 2012, the Department petitioned to terminate T.Z.'s parental rights to B.W. In its October 9, 2012 temporary order, the court found it was not in B.W.'s best interest to have T.Z. as B.W.'s managing conservator, and it appointed the Department as temporary managing conservator.

To allow T.Z. to regain conservatorship of B.W., the Department and T.Z. developed a new service plan for T.Z. Among other things, the plan required her to refrain from illegal drug use and participate in random drug tests, visit B.W. twice each month, and participate in family services courses and counseling. After T.Z. failed to complete several of her service plan requirements, the case was set for trial.

The jury found that the parent-child relationship should be terminated. The trial court terminated T.Z.'s parental rights to B.W. based on subparagraphs (D), (E), and (O) of Family Code section 161.001(1), *see* TEX. FAM. CODE ANN. § 161.001(1), and because it was in B.W.'s best interest, *see id.* § 161.001(2).

In her appeal, T.Z. contends that the evidence is neither legally nor factually sufficient to support the findings under section 161.001(1) subparagraphs (D), (E), or (O), nor under section 161.001(2). *See id.* § 161.001.

## STANDARD OF REVIEW

An order terminating parental rights requires clear and convincing evidence that (1) the parent has committed one of the grounds for involuntary termination as listed in section 161.001(1) of the Family Code, and (2) the termination is in the best interest of the child. *Id.*; *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002); *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002).

### A. Legal Sufficiency

In a case with a clear and convincing evidence standard, a legal sufficiency review requires a court to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *J.F.C.*, 96 S.W.3d at 266; *In re T.N.S.*, 230 S.W.3d 434, 438 (Tex. App.—San Antonio 2007, no pet.). A court must conclude the evidence is legally insufficient if it "determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true"; otherwise, the evidence is legally sufficient. *J.F.C.*, 96 S.W.3d at 266.

### B. Factual Sufficiency

Under a clear and convincing standard, the evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *accord In re K.R.M.*, 147 S.W.3d 628, 630 (Tex. App.—San Antonio 2004, no pet.). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266; *T.N.S.*, 230 S.W.3d at 438.

## SUFFICIENCY OF THE EVIDENCE

The trial court found that T.Z.'s conduct met three statutory grounds for termination: subparagraphs (D), (E), and (O). *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (O). T.Z. contends the evidence is neither legally nor factually sufficient to support any of these findings.

We begin by reviewing the evidence pertaining to subparagraph (O), that T.Z. "failed to comply with the provisions of a court order that specifically established the actions necessary for [T.Z.] to obtain the return of [B.W.]." *See id.* § 161.001(1)(O);[1] *In re J.F.C.*, 96 S.W.3d at 284.

## A.    Evidence Pertaining to Compliance with Service Plan

At trial, the Department contended that T.Z. should have been familiar with service plan requirements because she previously had her parental rights to her two daughters terminated based on her previous illegal drug use.  T.Z. acknowledged that she helped compose her October 2012 service plan, she knew what actions it required of her to regain conservatorship of B.W., and that the court ordered her to complete the plan.  Among other requirements, T.Z.'s plan required her to refrain from illegal drug use and participate in random drug tests, visit her son twice each month, and participate in family services courses and counseling.  We address each in turn.

### 1.    *Refrain From Illegal Drug Use, Submit to Testing*

At trial, several witnesses testified that T.Z. had a multi-year history of drug and alcohol abuse prior to October 2012, and T.Z. admitted using methamphetamines and marijuana during that period.  In her October 2012 service plan, T.Z. was required to refrain from illegal drug use and submit to random drug tests.  At trial, she admitted she smoked marijuana shortly before she went to court on October 9, 2012, because she was stressed, but insisted she had not smoked marijuana since then.  Her urinalyses in November 2012, January 2013, and July 2013, were negative for the tested substances including marijuana.  However, she missed two mandatory urinalyses in April 2013.  She did not ask to take "make-up" tests for those she missed.  In June

---

[1] To support termination of a parent's rights on subsection (O) grounds, the Department must also prove the child was removed due to abuse or neglect and the child had been in the Department's conservatorship for at least nine months. TEX. FAM. CODE ANN. § 161.001; *In re J.F.C.*, 96 S.W.3d at 277.  T.Z. does not challenge those elements, and we do not address them.

2013, she submitted a test sample that was rejected because it was cold, but she refused to be retested. At trial, she could not explain why the sample was cold.

### 2. *Visit B.W. Twice Monthly*

T.Z.'s plan required her to have supervised visits with B.W. twice each month. The record shows she visited B.W. about once each month, but she cancelled five scheduled visits. At trial, she offered various reasons for missing the visits, but admitted that she never called to ask for a visit to be rescheduled. When asked if she ever inquired about setting up a telephone visit, she said she did not know that was possible.

### 3. *Participate in Family Services Courses and Counseling*

Finally, T.Z.'s plan required her to participate in and complete specified courses and counseling. She testified she knew she had to complete specific courses and counseling, but offered no explanation for why she did not start any of those services from October through December of 2012. She knew she had to complete those services or lose B.W., but she admitted at trial that she had not completed all of the courses required by her plan.

### 4. *Rebuttal Evidence*

In rebuttal, T.Z. acknowledged she initially had problems completing her plan requirements, but asserted she has changed, and she has now substantially complied with her service plan requirements. She admitted she smoked marijuana in October 2012, but said she was stressed and that was the last time she smoked marijuana. She explained she missed some of her court-ordered visits with B.W. because she was taking care of other family members or trying to get a job. She also explained that she had completed an online parenting course, she was retaking the course in a classroom setting, and she was regularly attending her counseling sessions.

**B.      Statutory Ground Finding**

Having reviewed the evidence under the respective standards of review, we conclude that a reasonable factfinder could have formed a firm belief or conviction that T.Z. failed to comply with the provisions of her service plan as ordered by the court.[2]   Thus, we conclude that the evidence is legally and factually sufficient to support the jury's finding that T.Z. failed to comply with her service plan requirements.  *See* TEX. FAM. CODE ANN. § 161.001(1)(O); *In re J.F.C.*, 96 S.W.3d at 266, 284; *In re T.N.S.*, 230 S.W.3d at 438.

Because "[o]nly one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest," *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *accord In re J.P.B.*, 180 S.W.3d 570, 572 (Tex. 2005), we need not address the other two statutory grounds for termination, *see* TEX. FAM. CODE ANN. § 161.001(1)(D), (E); *In re D.J.H.*, 381 S.W.3d 606, 612 (Tex. App.—San Antonio 2012, no pet.).

We turn now to whether the evidence was legally and factually sufficient for the trial court to find that terminating T.Z.'s parental rights was in B.W.'s best interest.

**C.      Best Interest of the Child**

Even if it determines the parent's conduct meets one or more of the statutory grounds supporting termination, a court may not terminate the parent's rights unless it also finds that such

---

[2] Although T.Z. does not expressly argue substantial compliance in her brief, she made that argument at trial and, considering the fundamental nature of parental rights, we construe her recitation of related evidence in her brief as fairly including such an argument. *See Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (disfavoring waiver and directing courts to construe briefs "reasonably, yet liberally" so as to address "every subsidiary question that is fairly included").  Nevertheless, "Texas courts have held that substantial compliance is not enough to avoid a termination finding under section 161.001(O)."  *In re C.M.C.*, 273 S.W.3d 862, 875 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *accord In re T.T.*, 228 S.W.3d 312, 319 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *In re D.L.H.*, No. 04-04-00876-CV, 2005 WL 2989329, at *2 (Tex. App.—San Antonio Nov. 9, 2005, no pet.) (mem. op.).

"termination is in the best interest of the child." TEX. FAM. CODE ANN. § 161.001(2); *accord In re J.F.C.*, 96 S.W.3d at 261. We review the evidence pertaining to B.W.'s best interest.

### 1. Evidence of B.W.'s Best Interest

At trial, T.Z. and the Department examined several witnesses concerning whether terminating T.Z.'s parental rights was in B.W.'s best interest.

#### a. Marissa Lares

Marissa Lares, a conservatorship specialist with the Department, testified on several points. Lares testified that T.Z. tested positive for marijuana in October 2012, and had admitted such use. She added that she was concerned that T.Z. still had substance abuse issues. Lares also testified that T.Z. missed numerous visits with B.W., and may have unresolved anger management issues. When asked about B.W.'s placement options, Lares testified that T.Z.'s maternal cousin and her cousin's husband want to adopt B.W. She stated that the potential adoptive home is safe, stable, and a good place for B.W. to be raised. Lares concluded that it was in B.W.'s best interest for T.Z.'s parental rights to be terminated.

#### b. L.Z.

L.Z. testified that she is T.Z.'s step-mother, and that she has known T.Z. since T.Z. was just two years old. L.Z. told the jury that B.W. has been living with her and her husband since December 2011, but that it would be better for B.W. if younger parents adopted B.W. She knows the potential adoptive couple; the potential adoptive mother is T.Z.'s cousin, and L.Z. knows both her and her husband. L.Z. testified that the couple has provided very well for all of their natural children, they want to help B.W., and the couple would provide a good home for B.W. She noted that B.W. was excited about the prospect of living with the couple. When asked what was best for B.W., L.Z. said she loves T.Z., but that termination of T.Z.'s rights was in B.W.'s best interest.

c.    <u>T.Z.</u>

T.Z. testified that she could provide a good home for B.W. She described B.W.'s after-school schedule when B.W. lived with her. It included doing homework, having a snack, playing outside, dinner at 7:00 p.m., and bedtime at 8:00 p.m. every night. She testified she was reading a book on how to raise a child of B.W.'s gender, and it included a chapter on raising children without a father in the home. T.Z. emphasized that she loves B.W., she has decorated B.W.'s bedroom in preparation for B.W's return to live with her, and she will ensure B.W. has a safe, peaceful home.

*2.    B.W.'s Best Interest Finding*

Having reviewed the evidence under the respective standards of review, we conclude that a reasonable factfinder could have formed a firm belief or conviction that terminating T.Z.'s parental rights to B.W. was in B.W.'s best interest. *See In re J.F.C.*, 96 S.W.3d at 266; *In re T.N.S.*, 230 S.W.3d at 438. Therefore, we conclude that the evidence is legally and factually sufficient to support the trial court's order. *See In re J.F.C.*, 96 S.W.3d at 266; *In re T.N.S.*, 230 S.W.3d at 438.

## CONCLUSION

We conclude that the evidence was both legally and factually sufficient to support at least one of the statutory grounds for termination. Likewise, we conclude that the evidence was legally and factually sufficient to support the trial court's finding that termination of T.Z.'s parental rights to B.W. was in B.W.'s best interest. Therefore, we affirm the trial court's order.

Patricia O. Alvarez, Justice