COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-09-012-CV

 

 

IN THE INTEREST OF M.F.,
A CHILD

 

                                              ------------

 

           FROM THE 323RD
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.  Introduction








Appellant James appeals the trial court=s order
terminating his parental rights to his child, Martha.[2]  In three issues, James challenges the legal
and factual sufficiency of the evidence to support the trial court=s family
code section 161.001(1) termination ground findings and the trial court=s
finding that termination of James=s
parental rights to Martha is in her best interest.[3]  We will affirm.

II.  Background

At the time of trial, Martha was approximately
three years old.  James, who is the
alleged biological father of Martha, admitted at trial that he is her
father.  James is currently serving a
five-year sentence for burglary.  James
has been arrested multiple times for burglary and the unauthorized use of a
motor vehicle.  His current stint in jail
is not his first.

While he was serving state jail time for the
unauthorized use of a motor vehicle, Martha=s mother
began to write letters to James.[4]  When he was released, they began a romantic
relationship that lasted for several years. 
Martha is a child of that relationship.








At trial, both James and Martha=s mother
admitted that they were frequent drug users both before and after Martha=s
birth.  James testified that he smoked
marijuana and did not work while Martha=s mother
was pregnant with her.  According to
James, he and Martha=s mother frequently smoked
methamphetamine and marijuana.  Even
though he had experienced multiple run-ins with the law and had been
incarcerated multiple times, James never sought any type of drug treatment
prior to his conviction for burglary. 
And although James denies ever using drugs around Martha, the record
indicates that both he and Martha=s mother
used drugs while caring for both Martha and Martha=s older
half-brother.  By James=s own
testimony, he used drugs while caring for Martha=s older
half-brother.  When asked about this
fact, James=s response was, AThis was
not my child.@ 
The record also indicates that James knowingly left Martha with her
mother at times he was aware that she would engage in drug use.








Martha=s mother
testified that James had anger issues, and although James=s anger
would subside when he was high on drugs, his anger would worsen after he would A[come]
down off of it.@ 
She said that his post-drug-use anger could sometimes last for
days.  According to Martha=s
mother, James and she were involved in frequent bouts of domestic violence in
front of both children while the couple lived with Martha=s
maternal grandfather.  One such bout
persuaded the grandfather to bring officers to the house and have James Aescorted
out.@  The grandfather eventually asked James to
leave for good after the couple had a heated argument and the grandfather heard
from neighbors that James was selling drugs in the neighborhood.  Afterwards, the couple broke up.  James has had little contact with Martha
since she turned six months old.

James testified that he wished to maintain
parental rights because he would like to be a part of her life.  James admitted that he could not hope to care
for Martha until some time after his release, when Martha would be approaching
seven years old.  Although he testified
that he was currently not using drugs and had taken parenting classes, the
Child Protective Services= (CPS) caseworker testified that
there was no evidence that James had completed any part of his service plan.

CPS removed Martha from her mother=s care
after allegations were made that the mother was using and selling drugs.  Martha=s mother
has voluntarily relinquished her rights to Martha, believing that it is in
Martha=s best
interest to live where she currently livesCwith
Martha=s
maternal grandfather who provides and cares for Martha and wishes to adopt
her.  CPS=s
caseworker testified that the grandfather provides a stable and possibly
permanent home for both Martha and her older half-brother and that it was in
their best interestsCemotionally, financially, and
psychologicallyCto stay with the grandfather and
allow him to pursue adopting them.  There
was also testimony that the grandfather was concerned that once James was
released, he intended to move himself and Martha to Kansas.








Martha=s
grandfather testified that he would provide stability and security for
Martha.  He also said that if he was
allowed to adopt her, it would allow Martha to live in the same home with her
half-brother, whom according to the grandfather, she gets Aalong
extremely well@ with.

The trial court terminated James=s
parental rights, finding by clear and convincing evidence that he knowingly
placed or knowingly allowed Martha to remain in conditions or surroundings that
endangered her physical or emotional well-being; that he engaged in conduct or
knowingly placed Martha with persons who engaged in conduct that endangered her
physical or emotional well-being; and that termination of James=s
parental rights to Martha was in her best interest.  See Tex. Fam. Code Ann. '' 161.001(1)(D),
(E), 161.001(2) (Vernon Supp. 2009). 
This appeal followed.

III.  Burden of Proof and Standard of Review








A parent=s rights
to Athe
companionship, care, custody, and management@ of his
or her children are constitutional interests Afar more
precious than any property right.@  Santosky v. Kramer, 455 U.S. 745, 758B59, 102
S. Ct. 1388, 1397 (1982); In re M.S., 115 S.W.3d 534, 547 (Tex.
2003).  AWhile
parental rights are of constitutional magnitude, they are not absolute.  Just as it is imperative for courts to
recognize the constitutional underpinnings of the parent-child relationship, it
is also essential that emotional and physical interests of the child not be
sacrificed merely to preserve that right.@  In re C.H., 89 S.W.3d 17, 26 (Tex.
2002). In a termination case, the petitioner seeks not just to limit parental
rights but to erase them permanentlyCto
divest the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child=s right
to inherit.  Tex. Fam. Code Ann. ' 161.206(b)
(Vernon 2008); Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985).  We strictly scrutinize termination
proceedings and strictly construe involuntary termination statutes in favor of
the parent.  Holick at 20B21;
In re M.C.T., 250 S.W.3d 161, 167 (Tex. App.CFort
Worth 2008, no pet.).

In proceedings to terminate the parent‑child
relationship brought under section 161.001 of the family code, the petitioner
must establish one ground listed under subdivision (1) of the statute and must
also prove that termination is in the best interest of the child.  Tex. Fam. Code Ann. ' 161.001;
In re J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be established;
termination may not be based solely on the best interest of the child as
determined by the trier of fact.  Tex.
Dep=t of Human Servs. v. Boyd, 727
S.W.2d 531, 533 (Tex. 1987).








Termination decisions must be supported by clear
and convincing evidence.  Tex. Fam. Code
Ann. '' 161.001,
161.206(a).  Evidence is clear and
convincing if it Awill produce in the mind of the
trier of fact a firm belief or conviction as to the truth of the allegations
sought to be established.@ Id. ' 101.007
(Vernon 2008).  Due process demands this
heightened standard because termination results in permanent, irrevocable
changes for the parent and child.  In
re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002); see In re J.A.J.,
243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and
modification).

In reviewing the evidence for legal sufficiency
in parental termination cases, we must determine whether the evidence is such
that a factfinder could reasonably form a firm belief or conviction that the
grounds for termination were proven.  In
re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005). 
We must review all the evidence in the light most favorable to the
finding and judgment.  Id.  This means that we must assume that the
factfinder resolved any disputed facts in favor of its finding if a reasonable
factfinder could have done so.  Id.  We must also disregard all evidence that a
reasonable factfinder could have disbelieved. 
Id.  We must consider,
however, undisputed evidence even if it is contrary to the finding.  Id. 
That is, we must consider evidence favorable to termination if a
reasonable factfinder could and disregard contrary evidence unless a reasonable
factfinder could not.  Id.








We must therefore consider all of the evidence,
not just that which favors the verdict. 
Id.  But we cannot weigh
witness credibility issues that depend on the appearance and demeanor of the
witnesses, for that is the factfinder=s
province.  Id. at 573B74.  And even when credibility issues appear in
the appellate record, we must defer to the factfinder=s determinations
as long as they are not unreasonable.  Id.
at 573.

In reviewing the evidence for factual
sufficiency, we must give due deference to the factfinder=s findings
and not supplant the judgment with our own. 
In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006).  We must determine whether, on the entire
record, a factfinder could reasonably form a firm conviction or belief that the
parent violated the relevant conduct provisions of section 161.001(1) and that
the termination of the parent-child relationship would be in the best interest
of the child.  C.H., 89 S.W.3d at
28.  If, in light of the entire
record, the disputed evidence that a reasonable factfinder could not have
credited in favor of the finding is so significant that a factfinder could not
reasonably have formed a firm belief or conviction in the truth of its finding,
then the evidence is factually insufficient. 
H.R.M., 209 S.W.3d at 108.

 

 

 








IV.  Evidentiary Sufficiency of Endangerment
Findings

In his first two issues, James argues that the
evidence is legally and factually insufficient to support the trial court=s family
code section 161.001(1)(D) and (E) endangerment findings.

Endangerment means to expose to loss or injury,
to jeopardize.  In re J.T.G., 121
S.W.3d 117, 125 (Tex. App.CFort
Worth 2003, no pet.).  The trial court
may order termination of the parent-child relationship if it finds by clear and
convincing evidence that the parent has knowingly placed or knowingly allowed
the child to remain in conditions or surroundings that endanger the physical or
emotional well-being of the child.  Tex.
Fam. Code Ann. ' 161.001(1)(D).  Under subsection (D), it is necessary to
examine evidence related to the environment of the child to determine if the
environment was the source of endangerment to the child=s physical or
emotional well-being.  In re D.T.,
34 S.W.3d 625, 632 (Tex. App.CFort Worth 2000,
pet. denied).  Conduct of a parent in the
home can create an environment that endangers the physical and emotional
well-being of a child.  J.T.G.,
121 S.W.3d at 125.








The trial court may order termination of the parent-child
relationship if it finds by clear and convincing evidence that the parent has
engaged in conduct or knowingly placed the child with persons who engaged in
conduct that endangers the physical or emotional well-being of the child.  Tex. Fam. Code Ann. ' 161.001(1)(E).  Under subsection (E), the relevant inquiry is
whether evidence exists that the endangerment of the child=s physical or
emotional well-being was the direct result of the parent=s conduct,
including acts, omissions, and failures to act. 
J.T.G., 121 S.W.3d at 125. 
Termination under subsection (E) must be based on more than a single act
or omission; a voluntary, deliberate, and conscious course of conduct by the
parent is required.  Id.; D.T.,
34 S.W.3d at 634.  Because
the evidence pertaining to subsections 161.001(1)(D) and (E) is interrelated,
we conduct a consolidated review.  In re T.N.S., 230 S.W.3d 434,
439 (Tex. App.CSan Antonio 2007, no pet.); J.T.G.,
121 S.W.3d at 126.

To support a finding of endangerment, the parent=s conduct does not
necessarily have to be directed at the child, and the child is not required to
suffer injury.  Boyd, 727 S.W.2d
at 533.  The specific danger to
the child=s well-being may be inferred
from parental misconduct alone; and to determine whether termination is
necessary, courts may look to parental conduct both before and after the child=s
birth.  Id.; In re D.M., 58
S.W.3d 801, 812 (Tex. App.CFort
Worth 2001, no pet.).








Parental and caregiver illegal drug use support
a finding that the child=s surroundings endanger her
physical or emotional well‑being.  J.T.G.,
121 S.W.3d at 125.  Likewise, a parent=s
incarceration adds support to a trial court=s
finding that the child=s surroundings endangered her
physical or emotional well-being.  Boyd,
727 S.W.2d at 533B34.  This is true even though imprisonment alone
does not necessarily constitute Aengaging
in conduct which endangers the emotional or physical well‑being of a
child.@  Id.; D.T., 34 S.W.3d at 635B36.  But the State need not show incarceration was
a result of a course of conduct endangering the child; it need only show incarceration
was part of a course of conduct endangering the child.  Boyd, 727 S.W.2d at 533B34.  Thus, if the evidence, including
imprisonment, proves a course of conduct that has the effect of endangering the
child, the requirement of showing that the endangerment of the child=s physical or
emotional well-being was the direct result of the parent=s conduct is met.  Id. 
Furthermore, evidence of exposing a child to domestic violence supports
an endangerment finding.  See In re
M.R., 243 S.W.3d 807, 819 (Tex. App.CFort
Worth 2007, no pet.) (holding that there was legally and factually sufficient
evidence of both endangerment grounds when, among other things, the evidence
showed that the mother exposed her children to domestic violence).








In this case, the evidence shows that James used
illegal drugs before and after Martha was born. 
James himself testified that he used drugs before and after Martha=s
birth.  Martha=s mother
also testified to James=s drug use, her own drug use,
and that both of them exposed Martha and Martha=s older
half-brother to drugs.  She also
testified that James knowingly left Martha in her care, even though he knew she
was using drugs.  Martha=s mother
said that James would be affected by his methamphetamine use for days, and that
this contributed to his temper and domestic violence issues.  James is also an admitted recidivistChaving
been incarcerated multiple times for theft-related crimes.  James is currently incarcerated.  And there is evidence that he knowingly left
Martha in an environment, living with her mother, where the caregiver was using
and selling drugs.

Giving due deference to the trial court=s
findings, we hold that a reasonable trier of fact could have formed a firm
belief or conviction that James knowingly placed Martha in conditions and
engaged in conduct that endangered her physical or emotional well-being.  See Tex. Fam. Code Ann. '
161.001(1)(D), (E); J.P.B., 180 S.W.3d at 573; C.H., 89 S.W.3d at
28.  Accordingly, we hold that the
evidence is legally and factually sufficient to support the trial court=s
environmental endangerment and course of conduct endangerment findings.  We overrule James=s first
and second issues.

V.  Evidentiary Sufficiency of Best Interest
Finding

In his third issue, James argues that the
evidence is factually insufficient to support the trial court=s best
interest finding.  We disagree.








There is a strong presumption that keeping a
child with a parent is in the child=s best
interest.  In re R.R., 209 S.W.3d
112, 116 (Tex. 2006).  Prompt and
permanent placement of the child in a safe environment is also presumed to be
in the child=s best interest.  Tex. Fam. Code Ann. ' 263.307(a)
(Vernon 2008).  The following factors
should be considered in evaluating the parent=s
willingness and ability to provide the child with a safe environment:

(1) the child=s age and physical and
mental vulnerabilities;

 

(2) the frequency
and nature of out‑of‑home placements;

 

(3) the magnitude,
frequency, and circumstances of the harm to the child;

 

(4) whether the
child has been the victim of repeated harm after the initial report and
intervention by the department or other agency;

 

(5) whether the
child is fearful of living in or returning to the child=s home;

 

(6) the results of
psychiatric, psychological, or developmental evaluations of the child, the
child=s parents, other family
members, or others who have access to the child=s home;

 

(7) whether there is
a history of abusive or assaultive conduct by the child=s family or others who
have access to the child=s home;

 

(8) whether there is
a history of substance abuse by the child=s family or others who have access to the child=s home;

 

(9) whether the
perpetrator of the harm to the child is identified;

 








(10) the willingness
and ability of the child=s family to seek out,
accept, and complete counseling services and to cooperate with and facilitate
an appropriate agency=s close supervision;

 

(11) the willingness
and ability of the child=s family to effect
positive environmental and personal changes within a reasonable period of time;

 

(12) whether the
child=s family demonstrates
adequate parenting skills, including providing the child and other children
under the family=s care with:

 

(A) minimally
adequate health and nutritional care;

 

(B) care, nurturance,
and appropriate discipline consistent with the child=s physical and
psychological development;

 

(C) guidance and
supervision consistent with the child=s safety;

 

(D) a safe physical
home environment;

 

(E) protection from
repeated exposure to violence even though the violence may not be directed at
the child; and

 

(F) an understanding
of the child=s needs and capabilities;
and

 

(13) whether an
adequate social support system consisting of an extended family and friends is
available to the child.

 

Id. ' 263.307(b); see
R.R., 209 S.W.3d at 116.

 








Other, nonexclusive factors that the trier of
fact in a termination case may use in determining the best interest of the
child include (a) the desires of the child, (b) the emotional and
physical needs of the child now and in the future, (c) the emotional and
physical danger to the child now and in the future, (d) the parental
abilities of the individuals seeking custody, (e) the programs available
to assist these individuals to promote the best interest of the child,
(f) the plans for the child by these or by the agency seeking custody,
(g) the stability of the home or proposed placement, (h) the acts or
omissions of the parent which may indicate that the existing parent-child
relationship is not a proper one, and (i) any excuse for the acts or
omissions of the parent.  Holley v.
Adams, 544 S.W.2d 367, 371B72 (Tex.
1976).

These factors are not exhaustive; some listed
factors may be inapplicable to some cases; other factors not on the list may
also be considered when appropriate.  C.H.,
89 S.W.3d at 27.  Furthermore, undisputed
evidence of just one factor may be sufficient in a particular case to support a
finding that termination is in the best interest of the child.  Id. 
On the other hand, the presence of scant evidence relevant to each
factor will not support such a finding.  Id.








We have already detailed above the evidence of
James=s
longstanding course of illegal drug use, the mother=s drug
use, and the evidence that James knowingly exposed Martha and her half-brother
to the couple=s drug use.  James also showed callus disregard for
children in general when confronted with his and the mother=s use of
methamphetamine and marijuana in front of Martha=s
half-brother by stating, AThis was not my child.@  Regarding Martha=s living
situation, Martha has lived with her maternal grandfather and her half-brother
since she came into foster care.  Before
that, James had left Martha to live with her mother, whom James knew at the
time was a frequent drug user, and there is evidence in the record that she
sold drugs.

Regarding James=s
completion of the service plan that CPS formulated for him, James testified
that he had taken parenting classes, but the CPS caseworker testified that she
had not received any certifications of completion or information that the
parenting classes he took even complied with the service plan=s
requirements.  When asked specifically
about the service plan, the CPS caseworker stated, AI don=t see
any services that I can say that he has completed.@  Although James testified that he sought help
for his drug use from prison counseling and is currently not addicted to drugs,
he admitted that he previously discontinued using drugs during his earlier
incarceration and began using again after he was released.  The CPS caseworker testified that she believed
termination was in Martha=s best interest and that the
maternal grandfather should be allowed to adopt her because the grandfather
could Aprovide
the stability and the permanent home that [Martha and her half-brother] need.@  The caseworker also expressed concerns over
James=s
ability to remain Aclean@ from
his drug use.








As stated above, at the time of trial, Martha was
living with her maternal grandfather and half-brother.  The grandfather intends to adopt both
children and keep them together.  There
is evidence that Martha is bonded to the grandfather and half-brother.

James admitted that he would not be able to fully
provide for Martha until Asix to nine months@ after
his release from incarceration.  He also
admitted that this time period could possibly be extended to the point that
Martha would be nearing seven years old. 
At that time, Martha would have lived with her maternal grandfather for
at least five years continuously.








Considering the relevant statutory factors in
evaluating James=s willingness and ability to
provide Martha with a safe environment and the Holley factorsCincluding
her emotional and physical needs now and in the future, the potential emotional
and physical danger to her in the future if James again begins to use drugs
once released from incarceration, the parental abilities of the grandfather who
is seeking custody, and the acts or omissions of James that indicate that the
existing parent‑child relationship is not a proper one, all of which
weigh in favor of terminationCwe
conclude that in light of the entire record and giving due consideration to
evidence that the factfinder could have reasonably found to be clear and
convincing, a factfinder could reasonably have formed a firm belief or
conviction that termination of James=s
parental rights to Martha is in her best interest.  We hold that the evidence is factually
sufficient to support the trial court=s
section 161.001(2) best interest finding. 
See Tex. Fam. Code Ann. ' 161.001(2).  Accordingly, we overrule James=s third
issue.

VI.  Conclusion

Having overruled James=s three issues, we
affirm the trial court=s order terminating the parent-child
relationship between James and Martha.

 

PER
CURIAM

 

PANEL:  MEIER, GARDNER, and WALKER, JJ.

 

DELIVERED:  December 31, 2009











[1]See Tex. R. App. P. 47.4.





[2]Pursuant to Texas Rule of
Appellate Procedure 9.8(b)(2), we are using aliases for the names of the child
and the parent involved in this case.





[3]See Tex. Fam. Code Ann. ' 161.001(1) (Vernon Supp.
2009).





[4]Although the State has
convicted James for the unauthorized use of a motor vehicle on at least two
previous occasions, the record is not clear if he was serving time during his
first or second conviction when Martha=s mother began writing to him.