

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00270-CV

**IN THE INTEREST OF R.M.**, a Child

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA00044
Honorable Kimberly Burley, Judge Presiding

Opinion by:  Lori Massey Brissette, Justice

Sitting:  Irene Rios, Justice
Lori I. Valenzuela, Justice
Lori Massey Brissette, Justice

Delivered and Filed: August 28, 2024

AFFIRMED

This case involves the termination of Mother M.L.'s right to parent R.M. (born 01/08/2023).[1] M.L. appeals the trial court's order terminating her parental rights, arguing that the evidence is legally and factually insufficient to support the trial court's findings under Texas Family Code section 161.001(b)(1) and its finding that termination is in R.M.'s best interest. We affirm the trial court's order.

### BACKGROUND

When R.M. was born, she tested positive for methamphetamines and syphilis. M.L. also tested positive for methamphetamines at that time. The Department tried to locate a family member

---

[1] To protect the parent's and child's privacy, we refer to them by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.

or a family friend who could sign a safety plan for R.M. in order to avoid removing R.M. to foster care, but the investigator could not locate R.M.'s father, and M.L.'s contacts were unsuitable for placement due to their own history.[2] The Department removed R.M. from M.L. and placed her with a foster parent.

R.M. was M.L.'s seventh baby. M.L. admitted that her two babies before R.M. were also removed by the Department due to M.L.'s drug use. This was M.L.'s second case with the Department.

The Department established a service plan for M.L. that included a psychological evaluation, a substance abuse assessment, group counseling, and individual counseling. Before trial, M.L. completed all her service requirements, except individual counseling, and the trial court had extended the case.

In October 2023, M.L. was arrested for drug possession, and she was incarcerated. Her caseworker testified that M.L.'s arrest was surprising because M.L. was succeeding in her case plan up to that point. However, because of the drug arrest and incarceration, the caseworker recommended terminating M.L.'s parental rights.

Regarding M.L.'s criminal drug case, M.L. was able to enter a state-run rehabilitation facility in lieu of facing charges, but the rehabilitation program lasted six months. M.L. testified that she would be required to live in a halfway house for two months upon release, but she requested the opportunity to reunite with R.M. at that time. She also stated that she preferred for R.M. to live with her twenty-year-old daughter, D.F., though D.F. had not yet been vetted by the Department. R.M. was in her third placement, and her caregiver expressed a willingness to adopt.

---

[2] The Department later located the father and began a service plan for him to complete, but he did none of it, and his parental rights were terminated. He did not appeal.

The trial court ordered the Department to conduct a home study with D.F. to determine whether she would be an appropriate placement for R.M.

Ultimately, based on testimony from the Department's investigator and caseworker as well as from M.L., the trial court terminated M.L.'s right to parent R.M. pursuant to Texas Family Code section 161.001(b)(1)(D), (E), and (O) and found that termination of M.L.'s parental rights was in R.M.'s best interest. M.L. now appeals the trial court's termination order.

**FACTUAL AND LEGAL SUFFICIENCY REVIEW**

M.L. challenges not only the legal and factual sufficiency of the evidence supporting the trial court's findings under section 161.001(b)(1)(D), (E), and (O), but also the legal and factual sufficiency of the evidence on which the trial court relied to conclude that termination was in R.M.'s best interest.

*Applicable Law and Standard of Review*

It is of constitutional importance when a trial court involuntarily terminates a natural parent's rights. *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* We must find that the Department proved, by clear and convincing evidence, that a statutory ground existed to terminate the parental rights and that termination is in the best interest of the children. TEX. FAM. CODE ANN. § 161.206; *In re. A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263-64 (Tex. 2002). When performing a legal sufficiency review, where the standard is clear and convincing evidence, we must look at the evidence in the light most favorable to the factfinder's finding to determine whether a reasonable factfinder "could have formed a firm belief or

conviction that its findings are true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); TEX. FAM. CODE ANN. § 101.007. For factual sufficiency, we look to the evidence contrary to the finding to determine if it would prevent a reasonable factfinder from forming the same conviction or belief. *In re J.O.A.*, 283 S.W.3d at 345.

On review, an appellate court must not "substitute its own judgment for that of a reasonable factfinder." *In re Commitment of Stoddard*, 619 S.W.3d 665, 668 (Tex. 2020); *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole judge of the weight and credibility of the evidence. *In re J.O.A.*, 283 S.W.3d at 346. This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

### STATUTORY GROUNDS FOR TERMINATING M.L.'S PARENTAL RIGHTS

A single statutory ground finding, when accompanied by a best interest of the child finding, is sufficient to support terminating a parent's rights under section 161.001. *In re A.V.*, 113 S.W.3d at 362; *In re R.S.-T.*, 522 S.W.3d 92, 111 (Tex. App.—San Antonio 2017, no pet.). When, as here, the trial court terminates the parent's rights on multiple predicate grounds, we may affirm on any one ground. *In re A.V.*, 113 S.W.3d at 362; *In re D.J.H.*, 381 S.W.3d 606, 611-12 (Tex. App.—San Antonio 2012, no pet.).

M.L. challenges the trial court's findings on all three grounds, (D), (E), and (O). *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) ("We hold that due process and due course of law requirements mandate that an appellate court detail its analysis for an appeal of termination of parental rights under section 161.001(b)(1)(D) or (E) of the Family Code."). We turn to the law and the evidence supporting the trial court's challenged findings, beginning with grounds (D) and (E). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E).

**Section 161.001(b)(1)(D)**

Under subsection (D), a parent's rights may be terminated if, before the child is removed, the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). In the context of the statute, "'endanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

"A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see In re R.S.-T.*, 522 S.W.3d at 108–09. However, "[a] parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient." *In re R.S.-T.*, 522 S.W.3d at 109; *accord In re A.L.H.*, 468 S.W.3d 738, 746 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The relevant period for review of an environment supporting termination under subsection D is before the Department removes the child. *In re J.V.*, 171 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

**Section 161.001(b)(1)(E)**

A parent's rights to their child may also be terminated if the trial court finds the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *In re R.S.-T.*, 522 S.W.3d at 109; *In re T.N.S.*, 230 S.W.3d 434, 439 (Tex. App.—San Antonio 2007, no pet.). Under subsection E, the trial court determines whether the parent's acts, omissions, or failures to act endangered the child's physical or emotional well-being. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "It is not necessary that the parent's conduct be directed at the child or that the child actually be injured; rather, a child is endangered when the environment or the parent's course of conduct creates a potential for danger

which the parent is aware of but disregards." *In re R.S.-T.*, 522 S.W.3d at 110 (internal quotations omitted).

A parent's use of illegal drugs may qualify as an endangering course of conduct. *In re J.O.A.*, 283 S.W.3d at 345. A parent's incarceration during their case with the Department has the potential to qualify as well. *See In re J.F.-G.*, 627 S.W.3d 304, 312–13 (Tex. 2021). While our review under subsection D is limited to evidence of endangerment before the child is removed, a review under subsection E may involve evidence of a parent's course of conduct that occurs after the removal. *In re R.S.-T*, 522 S.W.3d at 109; *In re S.R.*, 452 S.W.3d at 360. Thus, "[a] parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being." *In re N.J.H.*, 575 S.W.3d 822, 832 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (quoting *In re K.C.F.*, No. 01-13-01078-CV, 2014 WL 2538624, at *10 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet.) (mem. op.)).

**Relevant Facts**[3]

When R.M. was born, before she was removed, she tested positive for methamphetamines because M.L. used them when she was pregnant with R.M.

Nine months after R.M. was removed, when M.L. was working toward reunification with R.M., M.L. was arrested for possession of methamphetamines. M.L. testified that she pursued rehabilitation as a potential alternative to conviction. She ultimately entered a six-month inpatient rehabilitation program with a release date of June 24, 2024—a year and a half after R.M.'s removal. M.L. also faced two months of living in a halfway house upon release.

---

[3] Here, for brevity, and because much of the evidence for these separate grounds overlaps, we consolidate our recitation of the evidence. *In re T.N.S.*, 230 S.W.3d 434, 439 (Tex. App.—San Antonio 2007, no pet.).

At the time of trial on March 4, 2024, the case had been extended, and R.M. was in her third foster placement. The extended deadline for mandatory dismissal in the case was set for July 2024. Because of M.L.'s drug charge and inpatient rehabilitation with a looming halfway house commitment, M.L. would not be available for a relationship with R.M. until the end of August 2024—nearly six months after trial.

**Analysis**

Based on the trial evidence, we conclude that the trial court did not abuse its discretion in finding that M.L. endangered R.M. both before and after removal, beginning with using drugs while pregnant (resulting in R.M. testing positive for methamphetamine at birth) and ending with an arrest for possession of methamphetamine after substance abuse treatment (resulting in incarceration from October 2023, on). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E); *In re R.S.-T.*, 522 S.W.3d at 109; *In re T.N.S.*, 230 S.W.3d at 439; *In re J.T.G.*, 121 S.W.3d at 125. Before removal, M.L. first endangered R.M. by using methamphetamines during pregnancy. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D). After R.M.'s removal, M.L. engaged in conduct that endangered the child's physical or emotional well-being by being arrested for drug possession and unavailable to R.M. for several months at a critical juncture, both in their relationship and in the court proceedings. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). Accordingly, we conclude that the evidence was legally and factually sufficient to support the trial court's findings under subsections (D) and (E). *See In re C.H.*, 89 S.W.3d at 25; *In re R.S.-T.*, 522 S.W.3d at 109.

Because only a single statutory ground finding is needed to support an order terminating a parent's rights to a child, *In re A.V.*, 113 S.W.3d at 362, and because we overrule M.L.'s challenges to grounds (D) and (E), we need not address M.L.'s challenge to the finding based on statutory ground (O). *See* TEX. R. APP. P. 47.1; *In re R.S.-T.*, 522 S.W.3d at 111.

**BEST INTEREST OF THE CHILD**

M.L. asserts that the evidence was legally and factually insufficient to support the trial court's finding that terminating her parental rights was in R.M.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). The Family Code statutory factors[i] and the *Holley* factors[ii] for best interest of the children are well known. Applying each standard of review and the applicable statutory and common law factors, we examine the evidence pertaining to the best interest of the child. We also consider the evidence we recited above pertaining to grounds (D) and (E) as we now review the best interest of the child under section 161.001(b)(2). *See In re C.H.*, 89 S.W.3d at 28 (noting that the same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2)); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 263.307(a) ("In considering the factors established by this section, the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest."); *In re J.O.H.*, 617 S.W.3d 596, 599 (Tex. App.—San Antonio 2020, no pet.) (holding that, in considering a child's best interest, a parent's future conduct may be judged by their past conduct).

The trial court heard the following testimony.

**R.M.'s Age and Vulnerabilities**

At the time of trial, R.M. was fourteen months old, and she was in her third placement. Her foster parent expressed a willingness to adopt, but the Department was ordered at the conclusion of trial to evaluate R.M.'s 20-year-old sister as a possible placement. R.M. had spent time during her case bonding with M.L. before M.L. was arrested and incarcerated, but M.L.'s arrest and rehabilitation derailed their progress.

At trial, M.L. acknowledged that R.M. needed permanency and stability but argued for possessory rights to R.M. The Department argued that R.M.'s need for permanency supported termination of M.L.'s parental rights, and the trial court agreed.

On appeal, M.L. has suggested that R.M.'s paternal grandmother or aunt could provide a suitable placement for R.M. until M.L.'s release, but the caseworker testified at trial that neither of these family members were suitable for R.M. due to their history with the Department. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (8), (11), (12); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (factors (B), (C)).

Overall, R.M.'s young age and need for a safe and stable home weighs against M.L.'s best interest challenge.

**M.L.'s Drug Abuse**

M.L. struggled over time with methamphetamine use, even despite completing drug abuse treatment through the Department. She was unsuccessful in her DFPS case that preceded this case because of methamphetamine use, and she continued to struggle with drug abuse during her bid for reunification with R.M.

M.L. had difficulty being transparent about her drug use as well. When R.M. tested positive for methamphetamines as a newborn, M.L. suggested that it was because R.M.'s father used the drug in M.L.'s presence, and not because she herself recently used it. At trial, M.L. admitted that R.M. tested positive for methamphetamines because she, M.L., used them during her pregnancy. However, she denied that the methamphetamines found in her car at the time of her October 2023 arrest belonged to her. She admitted being alone in the car at the time, but she claimed that a previous passenger must have left the drugs behind. M.L. also claimed that the reason she pursued rehabilitation after her arrest was for the benefit of her case with the Department, not because she

still needed to overcome her addiction. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (8), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H), (I)). This factor also weighs against M.L.

### Indicia of Parent-Child Relationship

M.L. participated in visitation with R.M. during her case with the Department. At the time, the Department was considering increasing visitation time because M.L. was making progress in her service plan. The visits were going well, and the pair seemed bonded.

However, M.L.'s October 2023 arrest showed that she was unable to completely avoid drugs, even for the sake of her relationship with R.M. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (8), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H)). This factor weighs against M.L.

### Providing for R.M.'s Needs

At the time of trial, M.L. no longer had a job or an apartment because of her incarceration. She testified that she could regain her previous employment upon release and that she could live with her mother. However, M.L.'s family had history with the Department and was not considered to be a suitable placement for R.M. *See* TEX. FAM. CODE ANN. § 263.307(b)(8), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H), (I)). This factor weighs against M.L.

### R.M.'s Placement

R.M. and M.L.'s caseworker testified that R.M.'s foster placement was meeting her needs. R.M. was happy, growing, thriving, and loved. She was comfortable in her caregiver's home and bonded to her caregiver as well. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (F), (G)). This factor weighs against M.L.'s best interest challenge.

**Ad Litem's Recommendation**

R.M.'s attorney ad litem recommended terminating M.L.'s parental rights. She cited M.L.'s long-term methamphetamine use and R.M.'s need for permanency. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H)). This recommendation militates against M.L.'s challenge on appeal.

**Analysis**

Having reviewed the evidence under the appropriate standards, we conclude the trial court could have reasonably formed a firm belief or conviction that it was in R.M.'s best interest for M.L.'s parental rights to be terminated. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (citing *In re C.H.*, 89 S.W.3d at 25). Therefore, the evidence was legally and factually sufficient to support the trial court's findings. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

## CONCLUSION

For the reasons given above, we affirm the trial court's order.

Lori Massey Brissette, Justice

---

[i] <u>Statutory Factors for Best Interest of the Child</u>. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

(1)    the child's age and physical and mental vulnerabilities;

(2)    the frequency and nature of out-of-home placements;

(3)    the magnitude, frequency, and circumstances of the harm to the child;

(4)    whether the child has been the victim of repeated harm after the initial report and intervention by the department;

(5)    whether the child is fearful of living in or returning to the child's home;

(6)    the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7)    whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8)    whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9)    whether the perpetrator of the harm to the child is identified;

(10)    the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

(A) minimally adequate health and nutritional care;

(B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

(C) guidance and supervision consistent with the child's safety;

(D) a safe physical home environment;

(E) protection from repeated exposure to violence even though the violence may not be directed at the child; and

(F) an understanding of the child's needs and capabilities; and

(13) whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[ii] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

(A) the desires of the child;

(B) the emotional and physical needs of the child now and in the future;

(C) the emotional and physical danger to the child now and in the future;

(D) the parental abilities of the individuals seeking custody;

(E) the programs available to assist these individuals to promote the best interest of the child;

(F) the plans for the child by these individuals or by the agency seeking custody;

(G) the stability of the home or proposed placement;

(H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).